**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Mickey V. POLLOCK,**
**Defendant-Appellant.**

No. 14713.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 1987.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Randall K. Wood, Springfield, for defendant-appellant.

GREENE, Presiding Judge.

Mickey V. Pollock was jury-tried and convicted of first degree robbery, § 569.020,[1] and armed criminal action, § 571.015. The trial court, after finding Pollock to be a prior offender, due to a previous felony conviction, sentenced him to cumulative sentences of 12 and 3 years' imprisonment for the two crimes.

Pollock appeals, contending the trial court erred in 1) denying his application for continuance, 2) denying his motion to compel discovery, 3) excluding evidence of polygraph examinations given Pollock and state's witness Laura Jones, 4) permitting Laura Jones to testify when the prosecutor knew she had failed a polygraph test concerning the robbery, thus knowing her testimony would be perjured, and 5) allowing state's witnesses Laura and Mitchell Jones to testify after they had remained in the courtroom, in violation of a court rule, during the presentation of the defense case in chief. We affirm.

The sufficiency of the evidence to sustain the convictions is not questioned on appeal. It suffices to say that the state introduced evidence at trial from which the jury could have found, beyond a reasonable doubt, that on May 21, 1985, Pollock and an accomplice, Kenny Caine, entered the home of Mitchell and Laura Jones, at which time Pollock produced a pistol and, through fear of force, took approximately $1,250 in cash from Mrs. Jones. Pollock's defense was that while he and Caine were in the Jones home on the day in question, there was no robbery but, in fact, Caine had stolen marijuana from the Jones' home and the robbery story was fabricated as revenge for the stealing of the marijuana. This defense was rejected by the jury.

■ In his first point relied on, Pollock claims trial court error in denying his application for a continuance. He contends such action "denied counsel the opportunity to depose two witnesses residing out of the state of Missouri whose testimony would have rebutted the credibility of the state's main witness, Laura Jones...."

The two witnesses referred to were evidently William D. Nichols, Jr. and James Dobkowski, who were residents of the state of New Jersey. Nichols, who was Laura Jones' cousin, and Dobkowski were visiting at the Jones home on the day of the robbery, and were allegedly asleep in an upstairs bedroom when the robbery occurred.

The criminal charges were filed against Pollock on May 24, 1985, which was three days after the occurrence in question. Pollock's attorney was given a complete copy of the state's investigative file on September 3, 1985. The file reflected who the state's prospective witnesses were, and what, if anything, they knew concerning the incident. The names and addresses of Nichols and Dobkowski were listed. The record does not indicate any effort on the part of Pollock's attorney to depose Nichols and Dobkowski before January 17, 1986, which was four days before trial.

On January 17, Pollock's attorney gave the state notice that he intended to take the depositions of 15 possible witnesses, including Nichols and Dobkowski. On January 20, Pollock's attorney filed an application

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all rules are to Missouri Rules of Court, V.A.M.R.

for the continuance in question, the pertinent portions of which read as follows:

1. That the State has endorsed as possible witnesses for the State the following individuals: William D. Nichols, Jr., 60 McCosh Road, Upper Montclair, New Jersey, James Dobkowski, 48 Sipp Avenue, Clifton, New Jersey, and Catherine Witte, Venture, West Park Mall, Cape Girardeau, Missouri.

2. That Defendant had requested the Prosecuting Attorney to produce these witnesses for depositions or for interview by the Defendant.

3. That the individuals, William D. Nichols, Jr. and James Dobkowski, were present in the alleged victim's home approximately two days before the alleged robbery wherein the victim met the Defendant for the first time.

4. That the individual, Catherine Witte, has moved and the Prosecuting Attorney's Office is not able to locate her nor the Defense Attorney's Office is able to locate her.

5. That the alleged victim has since failed a polygraph in reference to the incidents surrounding the alleged robbery.

6. That the above witnesses are necessary for the defense to prepare to refute the testimony of the alleged victim.

7. That the defense has not had the time due to the short trial setting to contact the witnesses that were not produced by the Prosecuting Attorney's Office and his rights to a fair trial would clearly be violated in that he would not be able to contact these witnesses nor subpoena them in time for the trial on the 21st day of January, 1986.

The trial court denied the motion during a pretrial conference. We gather from the comment preceding the denial that the trial judge felt defense counsel had ample time to depose the witnesses prior to trial, had he chosen to do so.

The decision of whether an application for continuance should be granted is within the broad discretion of the trial court, *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), and the court's ruling on such application will not be disturbed unless it appears that the trial court acted capriciously or oppressively. *State v. Stout*, 675 S.W.2d 931, 935 (Mo.App.1984).

In our review of this point, we note that the application for continuance was not accompanied by an affidavit "setting forth the facts upon which the application is based." Rule 24.09. This fact alone was sufficient reason to deny the application. *State v. Counts*, 693 S.W.2d 143, 144 (Mo. App.1985). In addition, we note that the trial date of January 21, 1986, was set by the court on December 5, 1985. If Pollock's attorney thought the two prospective witnesses might have had any information helpful to his client's defense, he had ample time to find out what it was. Further, there is nothing in the record to indicate what the prospective witnesses would have testified about. Further, Pollock did not show in his application "the materiality of the evidence sought to be obtained and the particular facts the witness will prove," *Smith v. State*, 674 S.W.2d 638, 640 (Mo. App.1984), and did not allege "facts showing reasonable grounds for belief that ... testimony of such witness will be procured within a reasonable time," *State v. McLaurin*, 684 S.W.2d 570, 571 (Mo.App.1984).

After considering all of these facts and the applicable law, we hold that the trial court did not abuse its discretion in denying the application for continuance.

■ Pollock's second point is that the trial court erred in denying his motion to compel discovery because "the state failed to provide the defendant with certain requested information discoverable under the Missouri Rules of Discovery which may have indicated the innocence of the defendant including information concerning the identification of the defendant, knowledge of the case by law enforcement officers reduced to writing, and the names of other suspects in this case...."

The point does not state what the requested information may have been that the state had failed to provide, why Pollock was entitled to it, or how he had been prejudiced by not getting the information requested. As written, the point violates

the tenets of Rule 30.06(d), and preserves nothing for appellate review. Plain error review is not justified as the prosecutor had already given Pollock a copy of his complete investigative file, including all police reports, thus complying with the requirements of Rule 25.03. The point has no merit.

Pollock's next two points are related. He asserts that the trial court erred in granting the state's motion in limine to exclude any comment or evidence concerning the results of polygraph examinations taken by Pollock and state's witness Laura Jones, and erred in allowing Laura Jones to testify when the state knew she had "failed" a polygraph examination in which she was asked questions concerning the crime, and therefore knew she was going to perjure herself if she testified that she was the victim of a robbery.

The results of polygraph examinations are not admissible evidence under Missouri law. *State v. O'Neal*, 651 S.W.2d 634, 636 (Mo.App.1983). Therefore, it was not error to exclude such evidence. A review of the record shows that no objection was made at trial to Laura Jones testifying, or to the prosecutor offering her as a witness. The point was not preserved for appellate review. *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982). Even if it had been, the point would have no merit, since Pollock's argument that since she "failed" a polygraph examination she must have been perjuring herself when she said at trial she was the victim of a robbery has no legal credence. Since the results of polygraph examinations are not admissible evidence, due to scientific unreliability, failure to "pass" a polygraph examination is no evidence of perjury. Points three and four are denied.

In his final point relied on, Pollock asserts that the trial court erred in allowing state's witnesses Laura and Mitch Jones to testify in rebuttal for the reason that those witnesses, after testifying in the state's case in chief, remained in the courtroom during the presentation of defendant's case, in violation of the trial court's admonition that all prospective witnesses remain outside the courtroom while the trial was in progress.

Prior to the commencement of the trial, the trial judge stated:

THE COURT: The rule on witnesses has been invoked, so if anybody anticipates they are going to testify for the State or the defendant, step out in the hall so we can find you easier.

Now, I guess we're ready to go.

During the state's case in chief, Laura and Mitch Jones testified, and related the events that led to the filing of the criminal charges against Pollock. At the close of the state's case, Pollock presented evidence, including the testimony of Thomas Hecht. Hecht testified that he was a friend of the Joneses, and that he had bought "weed" (meaning marijuana) from them, and that during one of his trips to the Jones' home "I asked Laura about the robbery, and she said there wasn't any robbery, that Mickey and Ken just didn't want to pay for their dope bill." He also testified that during the trial "Mitch said that he didn't want me to say anything about any drugs." After Hecht's direct testimony was finished, he was cross-examined at length by the prosecuting attorney, but stuck to his story.

At the close of Pollock's case, the prosecutor called Laura Jones as a rebuttal witness. Defense counsel objected "because she's been sitting in here, so now she will twist her testimony around. That's the reason we have the rule on witnesses." The trial judge, after observing that he did not know if Laura had been in the courtroom during the testimony of Hecht, directed the following inquiry:

THE COURT; Mrs. Jones, did you hear Tommy Hecht testify?

MRS. JONES: I just came in on the last 60 seconds of the conversation. I wasn't in the courtroom.

THE COURT: The last part? All right. Take the witness stand. I'm going to overrule your objection, Mr. Wood.

Laura then took the stand and denied that she had sold marijuana to Hecht, or that she had told him there was no robbery. Mitch Jones was then called as a rebuttal

witness and denied that he had told Hecht not to say anything about marijuana.

Permitting a witness to testify, after a general admonition that prospective witnesses should remain outside the courtroom while the trial is in progress is a question addressed to the sound discretion of the trial court. *Stanford v. Morgan*, 588 S.W.2d 89, 93 (Mo.App.1979).

Under the circumstances, there was no abuse of that discretion. The prosecutor had no advance warning as to what Hecht's testimony would be, as that fact had not been disclosed to him. Also, if Laura had only been in the courtroom during the "last 60 seconds" of Hecht's testimony, she would not have heard the questioned statements of Hecht. There is nothing in the record to indicate that Mitch Jones was in the courtroom during Hecht's testimony. Under the circumstances, we cannot say there was any abuse of discretion on the part of the trial court in allowing the rebuttal testimony.

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.