STATE of Missouri, Plaintiff–
Respondent,

v.

Robert Michael PATRICK,
Defendant–Appellant.

No. 20417.

Missouri Court of Appeals,
Southern District,
Division Two.

April 23, 1996.

Daniel T. Moore, Poplar Bluff, for appellant.

Paul E. Oesterreicher, Pros. Atty., Ripley County, Doniphan, for respondent.

SHRUM, Chief Judge.

Robert Michael Patrick (Defendant) was convicted by a jury of driving a motor vehicle "in excess of the speed limit set by law" in violation of § 304.010.2, RSMo 1994.[1] He was sentenced in accordance with the jury's verdict to sixty days in the county jail and fined $500. Defendant appeals, contending that the trial court lacked subject matter jurisdiction because of an alleged defect in the original information. He also charges that the trial court erred in allowing the State to file an amended information and to endorse a "surprise witness" on the day of trial. Finally, Defendant claims that the trial court abused its discretion when it denied his motion for continuance. We affirm.

## FACTS

From the legal file and the transcript of Defendant's trial, we summarize facts germane to Defendant's points on appeal.

On December 3, 1994, at approximately 6:30 p.m., Missouri State Highway Patrol Sergeant Ronald T. Berry was driving west on U.S. Highway 160 "just west of Highway junction 21" in Ripley County when he saw an automobile approaching him. Because of his impression that the oncoming car was "coming at me at a very high rate of speed," Berry activated the mobile radar unit in his car, whereupon it measured the speed of the vehicle at 95 miles per hour. As soon as the car passed, Berry turned around to follow and ultimately stopped it. After learning that Defendant was the operator of the vehicle, Berry completed a multi-copy, preprinted Uniform Complaint & Summons, substantially similar in form and content to Supreme Court Form 37.A. A Uniform Complaint & Summons is commonly referred to as a "traffic ticket." For convenience, we will refer to the one involved in this case as "the ticket."

Berry used an "x" on the ticket to indicate the Defendant "Did unlawfully operate" his vehicle. In the portion of the ticket that calls for a description of the violation, Berry wrote, "Speeding 95/55 W/B east of 21." In other parts of the ticket, Berry wrote "95" mph as being Defendant's speed when the limit was "55" mph and also described Defendant's actions as being "in violation of 304.010 RSMo."

After issuing the ticket to Defendant, Berry checked his radar unit with tuning forks and determined that the radar was working properly at that time.

On June 16, 1995, four days before trial, the State filed a motion for leave to file an information in lieu of the ticket. The proposed information endorsed a new witness in addition to Berry; namely, Richard W. King, a patrol employee whose job duties included certification of the annual calibration of radar tuning forks and a monthly check of the accuracy of the device used to calibrate tuning forks. Defendant's counsel did not learn of the State's intention to file an information in lieu of the ticket and about the proposed endorsement of a new witness until around noon, June 19, 1995, approximately 20 hours before trial.

During the pre-trial conference on June 20th, Defendant's lawyer first moved to dismiss the charge, arguing that "no charge has been properly brought as [the ticket] lacks the necessary elements." The trial court never ruled on that motion, but instead sustained the State's request to file an informa-

---

**1.** Sections 304.009, RSMo 1994 and 304.010, RSMo 1994 set the maximum speed limits for persons driving on state highways at the time of this offense. On March 13, 1996, the Governor signed H.B. 1047, an enactment that changes maximum speed limits on most of Missouri's highways. Necessarily, this opinion is confined to an analysis of §§ 304.009 and .010, RSMo 1994.

tion in lieu of the ticket.[2]   Moreover, the trial court overruled Defendant's additional objection to the belated endorsement of Richard W. King as a witness and also denied Defendant's request for a continuance.   The trial judge explained his ruling thusly:

> "Mr. Moore, I'm having some problem in understanding exactly how the defense is prejudiced by Mr. King being able to testify today if I allow you some time to talk to him before his testimony.   And we will have some time to do that and will allow you to do that.   I'm having some problem in understanding what the prejudice will be since you have said or indicated on the record that this witness is pretty much cut and dry [sic].   I think we all understand that he is going to ... testify that he checked the radar device with tuning forks and it was working, which is an essential element of the state's case."

## DISCUSSION AND DECISION

*Lack of Jurisdiction*

■ Defendant's first point maintains that the trial court "erred in overruling Defendant's motion to dismiss the uniform traffic ticket in that [the ticket issued by Berry] and filed by the Prosecutor was fatally defective because it only contained the legal conclusion of 'speeding', and failed to allege the necessary elements that Defendant was 'operating a motor vehicle in excess of the posted speed limit of 70 mph', in violation of RSMo 304.010, and, as a result of this omission, the court acquired no jurisdiction."

To support this argument, Defendant relies on *State v. Owens,* 740 S.W.2d 269 (Mo. App.1987) and *State v. Prock,* 759 S.W.2d 854 (Mo.App.1988), which in turn relied substantially upon *State v. Gilmore,* 650 S.W.2d 627 (Mo. banc 1983).   *Gilmore* and its progeny held that if an information was insufficient, the trial court acquired no jurisdiction, and whatever transpired thereafter was a complete nullity.   *Id.* at 628[2].   However, Defendant does not mention that this principle

was disapproved and *Gilmore* was specifically overruled by *State v. Parkhurst,* 845 S.W.2d 31 (Mo. banc 1992).

*Gilmore* and the other cases cited by Defendant predate *Parkhurst* and are of no aid under this point.   In holding an information valid, *Parkhurst* stated:

> "*Gilmore* mistakenly relied on the confusing statement of law found in a number of cases that if an indictment is insufficient, the trial court acquires no jurisdiction of the subject matter.... Subject matter jurisdiction of the circuit court and the sufficiency of the information or indictment are two distinct concepts.... Circuit courts obviously have subject matter jurisdiction to try crimes, including the felony of unlawful use of weapons.   Mo. Const. art. V, § 14(a)....   Cases stating that jurisdiction is dependent upon the sufficiency of the indictment or information mix separate questions.   That language in *Montgomery [v. State,* 454 S.W.2d 571 (Mo.1970) ]; *Gilmore*; [*State v.] Brooks*[, 507 S.W.2d 375 (Mo.1974) ] and other cases should not be relied on in the future. [ ] Equally inaccurate is the statement in at least one case that absence of an information deprives the trial court of jurisdiction over the person."

*Parkhurst,* 845 S.W.2d at 34–35 (citations, footnote omitted).

Here, Defendant did not go to trial on the ticket, but rather on an amended information in lieu of the ticket.   Whatever the *defect* in the ticket, the trial court still had subject matter jurisdiction over the offense and personal jurisdiction over Defendant.   *See Parkhurst,* 845 S.W.2d at 35; *State v. Stein,* 876 S.W.2d 623, 626 (Mo.App.1994).   It follows that the trial court had authority to permit amendment of the information so long as the correction did not run afoul of Rule 23.08 and § 545.300, RSMo 1994.   There is no merit to Defendant's first point and it is denied.

---

**2.** The relevant part of the information reads:
"[D]efendant ... in violation of Section 304.010.2, RSMo., committed the misdemeanor of speeding ... in that on ... December 3,

1994, in [Ripley County, Missouri], the defendant operated a motor vehicle on a highway known as U.S. Highway 160 by speeding in excess of the speed limit set by law."

*Error in Allowing Amendment of Information*

■ We quote verbatim Defendant's second point relied on:

"The court erred in allowing the state to file, on the day of trial, an information in lieu of the uniform traffic ticket in that the information was a nullity because the uniform traffic ticket was fatally defective and one may not amend a fatally defective information due to a lack of jurisdiction, and in that the charge may not be lawfully amended because the information charged the defendant with a wholly new crime, namely a violation of RSMo 304.010 involving speeds in excess of 70 mph, when the uniform traffic ticket mentioned the speed of only 55 mph, which is in violation of RSMo § 304.090 [sic] and RSMo § 304.090 [sic] is not a lesser included offense of § 304.010."

Our analysis and rejection of Defendant's first point is dispositive of the initial prong of his second point, i.e., that the ticket was a nullity and so fatally defective that the trial court could not amend the information "due to lack of jurisdiction." *See Parkhurst*, 845 S.W.2d at 35; *Stein*, 876 S.W.2d at 626.

■ Regarding the second part of Defendant's Point II, we first note Rule 23.08. In pertinent part it provides:

"Any information may be amended ... at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced. No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare his defense by reason of such amendment or substitution."

Rule 23.08's statutory counterpart, § 545.300, also deals with amending an information and states that "no such amendment shall be allowed as would operate to charge an offense different from that charged or attempted to be charged in the original information." Applying the foregoing, Missouri courts consistently hold that "[i]t is not permissible to amend an information if the effect of the amendment is to charge an offense different

from the one originally charged." *State v. Amerson*, 661 S.W.2d 852[1] (Mo.App.1983). A lesser included offense, however, is not a different offense within the meaning of the foregoing rule. *Id.*

Missouri has two statutes that set maximum speed limits for persons operating motor vehicles upon the highways of this state. Section 304.009, RSMo 1994, commonly referred to as the non-point statute, set the uniform maximum speed limit at 55 miles per hour for all roads and highways of this state which are not part of the interstate system of highways. § 304.009.1, RSMo 1994. Drivers who were charged and convicted under § 304.009.1, RSMo 1994 "[s]hall not accumulate points until and unless such speed exceeds those maximums set by other state statute...." § 304.009.2, RSMo 1994.

The other statute, § 304.010, RSMo 1994 (commonly known as the point statute), set different maximum speed limits on the highways of this state depending upon the type of highway, vehicle, and lighting conditions. The relevant section here is § 304.010.2(3), RSMo 1994, which provided that no vehicle shall be operated in excess of "[s]ixty-five miles per hour on any undivided highway designated and marked as a federal route ... when lighted lamps are required by law...."

Here, the ticket as written by Berry described Defendant's violation as "speeding 95/55 w/b East of 21," and it advised that he was "driving 95 MPH ... [w]hen limited to 55 MPH ... in violation of 304.010." Defendant argues that because the ticket recited a limit of 55 mph, he could only be charged with a violation of 304.009; consequently the amended information charged "a completely different" crime contrary to Rule 23.08 and case authority such as *Amerson*, 661 S.W.2d 852.

That is simply not so. The offense of driving in excess of the limits set in § 304.010, RSMo 1994 could not be proved without proving incidentally that the offender traveled over 55 miles per hour. *State v. Canepa*, 671 S.W.2d 22, 23 (Mo.App.1984). The *Canepa* court analyzed the two speeding statutes thusly: "At speeds over [65] miles per hour, the two offenses, i.e. driving over

55 miles per hour and driving over [65] miles per hour are identical offenses, not a greater inclusive and a lesser included." *Id.* at 23. "The same facts (in the over-[65] range) would establish an offense against either statute, at the prosecutor's election." *Id.* The prosecutor in this case elected to charge Defendant with a violation of § 304.010, RSMo 1994 by filing the ticket as Berry had written it. The ticket adequately set forth the elements of the offense under § 304.010, RSMo 1994 as well as under § 304.009, RSMo 1994, i.e., driving a motor vehicle on U.S. Highway 160 at 95 miles per hour when the limit was 55 miles per hour. The amended information did not charge a different offense from that originally charged, it merely omitted a reference to a limit of 55 miles per hour and replaced it with a recital that Defendant was speeding on U.S. Highway 160 by operating a motor vehicle in excess of the limit set by § 304.010.2, RSMo 1994. There is no merit to Defendant's second point and it is denied.

*Witness Endorsement and Denial of Continuance*

■ In Defendant's third point, he contends that the trial court abused its discretion by allowing the endorsement of Richard King as a witness on the morning of trial and by permitting him to testify concerning the calibration of the equipment used to check the accuracy of radar tuning forks. To support his point, Defendant relies on *State v. Stamps,* 865 S.W.2d 393 (Mo.App.1993), which states:

"Under rule 23.01(f), the court has discretion to permit the late endorsement of any material witness.... Absent an abuse of discretion or prejudice to the appellant, the conviction should not be overturned because a witness was endorsed on the day of trial.... In exercising its discretion, the trial court should consider whether appellant waived his objection, whether the state intended to surprise or disadvantage appellant, whether appellant was actually surprised or disadvantaged, and whether the testimony could have been readily foreseen by appellant."

*Id.* at 397[7] (citations omitted).

Defendant argues—correctly so—that he did not waive his objection to the trial court's permitting witness King to testify. His lawyer objected during the pre-trial conference, renewed that objection when King was called to testify, and preserved the objection in the motion for new trial. On the other hand, we are not convinced that the State intended to surprise or disadvantage Defendant, that Defendant was actually surprised or disadvantaged, or that King's testimony was unforeseen by Defendant. The record clearly demonstrates otherwise. To illustrate, at the pre-trial conference regarding the State's request to endorse witness King, defense counsel told the court that he had tried "lots of speeding tickets before" and knew that the "[s]tate could not make a submissible case with the only witness that they had endorsed up until twenty hours ago, which was Trooper Berry." Additionally, defense counsel told the trial judge that:

"The major defense that the defendant intended to use ... was that the state would not have a proper foundation in order to introduce the results of the radar gun into evidence.... I don't know whether the state intended purposefully to surprise or disadvantage the defendant, but he has certainly been surprised and will be disadvantaged if this case goes to trial today."

When asked to explain the belated witness endorsement, the prosecutor stated that he and defense counsel had talked for several months about resolving the case but "it wasn't clear until last week ... that this case was in fact going to go to trial...." The prosecutor continued:

"Mr. Moore, by his own statement, admits that he has known for some time there would need to be a radio [sic] operator to lay a proper foundation.... [Trooper King] will only testify as to the accuracy of the tuning forks in which he calibrated at some point along with Trooper Berry.... I understand what Mr. Moore is talking about that he had a defense, but by his own admission he knew what the state had to prove and the state is attempting to prove that."

Defense counsel responded: "I essentially agree with Paul, but as the Court knows you

have to select a defense [and without King's testimony] we ... have a good defense ... because it appear[s] that the state would not be able to get the radar results into evidence...." In declining an offer to interview the new witness before trial, defense counsel acknowledged that his testimony would not be a surprise.

> "MR. MOORE: ... I agree with [the prosecutor] ... I assume that I know what it is that he will testify about. It's the fact that he is here to testify is what throws a monkey wrench in the defense' [sic] whole strategy and plan.... I mean we have got to be able to regroup and see what other defenses are available."

Defense counsel never suggested to the trial court what other defenses he deemed available, nor has he informed this court what defenses he might have employed had he not relied on the absence of witness King.

■ The so-called defense relied on by Defendant was little more than a hope that procrastination by the prosecutor or prosecutorial incompetence would ultimately lead to his acquittal. By Defendant's own admission he was neither surprised by the existence of witness King nor by his testimony. He knew that such a witness existed and that his proposed testimony was essential to the State's case. While we understand that Rule 23.01(f) is intended to discourage the late endorsement of a witness, we also recognize that "late endorsements must sometimes be permitted if they can be made without prejudice to the defendant's rights." *State v. Cobb*, 444 S.W.2d 408, 415 (Mo. banc 1969); *State v. Dees*, 639 S.W.2d 149, 157 (Mo.App. 1982). We believe that this is such a case. Finding no abuse of trial court discretion in allowing the belated witness endorsement and no prejudice to Defendant, we deny Point III.

### Denial of Motion for Continuance

■ Defendant's fourth point alleges that the trial court abused its discretion in failing to grant his request for a continuance, thus prejudicially affecting his ability to adequately prepare a defense.

■ The decision to grant or deny a continuance is a matter of trial court discretion and an appellate court will not interfere unless it clearly appears that such discretion has been abused. *State v. Schaal*, 806 S.W.2d 659, 666[12] (Mo. banc 1991), *cert. denied*, 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140; *State v. Williams*, 652 S.W.2d 102, 108[4] (Mo. banc 1983). The party requesting the continuance bears the burden of showing prejudice, and a very strong showing is required to demonstrate an abuse of discretion. *Schaal*, 806 S.W.2d at 666[12]. On this record, no abuse of discretion appears.

Via his remarks to the trial judge, defense counsel demonstrated that he was an experienced trial attorney who had previously tried traffic cases involving radar devices. The record also reflects that trial counsel had represented Defendant from the inception of the case. The fact that Defendant relied on the possible absence of a witness needed to establish the accuracy of the radar as his "only defense" and his "entire trial strategy" demonstrates the weakness of Defendant's position. Defendant made no showing to the trial court that he was not ready to proceed on the scheduled date because of a defense that was overlooked. Moreover, Defendant does not suggest to this court—some ten months after trial—what additional defense he could have presented had he been given more time.

We do not overlook Defendant's three arguments in support of his claim that the trial court abused its discretion in denying his motion for continuance. First, he protests that he was never arraigned on the amended charge. Second, he contends that he was never given the opportunity to conduct discovery on the new charge. Finally, Defendant complains that he could not depose the new witness.

As we explained in addressing Defendant's Point II, the amended information did not charge a different offense from that which was originally charged. Defendant offers no explanation of how being deprived of a redundant arraignment or repetitive discovery prejudiced him. As to depriving Defendant of the opportunity to depose the new witness,

we reiterate our observation made in discussing Defendant's third point that defense counsel declined the opportunity to interview the new witness before trial. Given that observation, it is not surprising that Defendant does not identify any particular defense that a continuance would have given him the opportunity to present. Defendant has failed to sustain his burden of demonstrating that the denial of a continuance was prejudicial to his case. *Williams*, 652 S.W.2d at 109. There was no abuse of discretion by the trial court, particularly as Defendant had able representation. *Id.* Point IV is denied.

The judgment and sentence of the trial court are affirmed.

PREWITT, P.J., and PARRISH, J., concur.