STATE of Missouri, Plaintiff–
Respondent,

v.

Gary Earl DOWNEN, Respondent–
Appellant.

No. 22199.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 22, 1999.

Thomas D. Carver, Dee Wampler, Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackleprang, Asst. Atty. Gen., Jefferson City, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Gary Earl Downen ("Defendant") was found guilty by the trial court of the class B felony of possession of a controlled substance with the intent to distribute or deliver in violation of § 195.211,[1] and received a sentence of five years. He contends on appeal that the trial court erred in allowing the State to endorse additional witnesses prior to trial, and in not sustaining his motion for judgment of acquittal. We affirm.

In a court-tried case the sufficiency of the evidence is determined by the same standard as in a jury-tried case and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992). In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored. *Id.* Viewed in that manner, the evidence in this case was as follows:

Defendant permitted his friends, Ben and Kim Jeckle, to leave a safe, which contained marijuana, in the bedroom of his home. According to the evidence, Defendant provided some of the marijuana to his daughter for distribution and sale, and she returned the money from those transactions to him. On February 14, 1997, the safe, which contained seven pounds of marijuana, was taken from Defendant's bedroom by Matthew Shane ("Matthew")

---

1. All statutory references are to RSMo 1994 and all rule references are to Missouri Rules of Criminal Procedure (1999), unless otherwise indicated.

and Randy Hake, acquaintances of Defendant's daughter. Ben and Kim Jeckle apparently learned that Matthew might have been involved in the theft and at one point abducted him from a movie theater parking lot in an attempt to obtain a confession from him and a return of the marijuana. Matthew later admitted his involvement when confronted at Defendant's home by Kim and acquaintances of hers. He was told that he had to return the marijuana he had taken from the safe (3½ lbs.) or $4,000 by that night. Matthew informed his father of the situation and they contacted the Christian County Sheriff's office which, in turn, involved Trooper Tim Rousset ("Trooper Rousset"), of the Missouri Highway Patrol who was working as an undercover officer. Matthew called Kim Jeckle at Defendant's home from the Sheriff's Office, and he was told to deliver the money for the marijuana to Defendant's house. Trooper Rousset went to Defendant's home posing as Matthew's uncle and talked with Defendant who told him that Matthew had stolen the safe containing "money and some things which belonged to some friends of his" and that Matthew owed $3,000. Trooper Rousset next went to the business where both Ben Jeckle and Defendant were employed and spoke with Jeckle who told him that Matthew owed $6,000, and that if it was not paid both Matthew and Defendant would be in trouble. Trooper Rousset later returned to Jeckle's employment and attempted to deliver a bag containing marijuana but Jeckle agreed that he could deliver it to Defendant. On February 24, 1997, Trooper Rousset went to Defendant's residence and told Defendant that he and Matthew's father had searched Matthew's room and had found a pound of marijuana and $1,000, and that he was willing to give those to Defendant. Defendant went to the pickup that Trooper Rousset was driving and accepted an envelope containing

$1,000. The marijuana was in a plastic bag which, in turn, was contained in a paper bag in the back of the pickup. Trooper Rousset slid the bag to Defendant who opened it, said there appeared to be a pound of marijuana in it, which would be worth $1,000, and said that together with the cash there was still $1,000 to be accounted for. According to Trooper Rousset, Defendant was very accurate in his judgment of the weight and value he placed on the marijuana, which was based on what it could be sold for. Trooper Rousset arrested Defendant as he held the bag containing the marijuana.

■■■ In his first point on appeal, Defendant contends that the trial court erred in not sustaining his objection to the State's late endorsement of witnesses and his request for a continuance, as well as his motion to strike the testimony of one of those witnesses. He argues that their testimony was a surprise and that he was unfairly prejudiced in that he was unable to prepare to rebut it.

A two count information was filed against Defendant on August 15, 1997, charging in one count that on February 24, 1997, he possessed a controlled substance, and in another count that he possessed it with the intent to distribute or deliver it. At that time the State endorsed three witnesses pursuant to Rule 23.01(f).[2] The case was set for trial on January 20, 1998, and on December 15, 1997, the State filed an amended endorsement of witnesses adding six additional witnesses. On January 9, 1998, the State filed a second amended endorsement of witnesses in which it added two more names to its witness list.

On January 20, 1998, prior to the commencement of trial, Defendant's attorney raised an issue about the amended witness lists. He informed the trial court that they had been filed but that no order had

---

**2.** Rule 23.01 pertains to the contents of indictments or informations and subsection (f) of that Rule provides: "The names and addresses of all material witnesses for the prosecution except rebuttal witnesses and witnesses who will appear upon the trial for the production or identification of public records shall be listed. Additional witnesses may be listed at any time after notice to the defendant upon order of the court."

been entered allowing the amendments. He asked the trial court to rule on whether the amendments would be allowed, and if they were, he orally requested a continuance to investigate the additional witnesses listed. In doing so, he represented to the trial court that he received the latest amendment on January 12, 1998, eight days before trial.

In considering Defendant's request, the trial court asked the assistant prosecutor which of the witnesses she intended to actually call at trial. Of the six witnesses contained on the first amended list, she said that she intended to call two of them, and the other four she would "most likely not" call, but that she wanted to have the option of doing so depending on what developed during the trial. The trial court then established from Defendant's counsel that there had been discovery in the case, and that documents produced to the defense contained the names of all of the witnesses on the amended lists. The trial court allowed the State to endorse the witnesses contained in both amended lists and denied Defendant's request for a continuance. Defendant then waived a jury trial, and the case went to trial before the trial court the next day. During the trial, the State called four of the six witnesses listed on the first amended list and one of the two contained in the second amendment.

■ A trial court has broad discretion in permitting the late endorsement of witnesses. *State v. Sweet,* 796 S.W.2d 607, 613 (Mo. banc 1990). A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Brown,* 939 S.W.2d 882, 883–84 (Mo. banc 1997).

■ In considering whether a trial court abused its discretion in permitting the endorsement of additional witnesses, an appellate court will consider the following factors: (1) whether the defendant waived the objection; (2) whether the State intended to surprise the defendant or acted deceptively or in bad faith intending to disadvantage the defendant; (3) whether the defendant was, in fact, surprised and suffered disadvantage; and (4) whether the type of testimony given might have been readily contemplated by the defendant. *State v. Thomas,* 965 S.W.2d 396, 399 (Mo.App. S.D.1998). The main consideration is whether the late disclosure resulted in fundamental unfairness or prejudice to substantial rights of the defendant. *Id.* Absent an abuse of discretion or prejudice to the defendant, a conviction should not be overturned because of the late endorsement of witnesses. *State v. Stamps,* 865 S.W.2d 393, 397 (Mo.App. E.D.1993).

■ In this case, Defendant is not entitled to a reversal because of the endorsement of the witnesses in question. While Defendant objected to the endorsement the day before trial, he did not object to the testimony of any of the newly endorsed witnesses when they were called to testify. The proper time to object to a witness testifying is when he or she is offered as a witness. *Id.* at 398. There is no indication that the State intended to surprise or disadvantage Defendant. Additionally, it is apparent that the testimony of the additional witnesses could have been readily foreseen by Defendant, and he does not demonstrate how he was actually surprised or disadvantaged. All of the witnesses in question were identified in the police report and documents disclosed to Defendant in discovery; four of those witnesses who testified, and about which Defendant objects, were identified to him as potential witnesses over one month prior to trial, and the other was identified over a week before the matter of the endorsement was taken up; all of the witnesses who testified were in the courthouse the day the issue of the endorsement was taken up (the trial did not actually commence until the next

day) and were available to be interviewed by Defendant's counsel; Defendant does not indicate any reason why he could not have interviewed or deposed the witnesses prior to trial; and Defendant gives no indication about what information he was prevented from obtaining which would have been helpful in combating the testimony of the witnesses in question. In fact, Defendant argues that the witnesses in question testified to matters which were not probative of the charges against him, and says that "[t]he prejudice generated by the testimony ... was unfair because it directed the court's attention away from the real issue of possession to a sideshow in which the irrelevant and unlawful activities of others became the focal point of the trial," and "[h]ad counsel been given additional time to combat this distraction, he, no doubt, would have been successful in rebutting or preventing the testimony in the first place." We are not persuaded that this is a situation where Defendant suffered fundamental unfairness or prejudice as a result of the endorsement of the witnesses in question. Our appellate courts have held that the trial court did not err in permitting the testimony of witnesses in factual settings where witnesses were identified in police reports furnished to the defense and less notice was given of the intent to call witnesses than in this case. *See State v. Patrick*, 920 S.W.2d 633, 637–38 (Mo.App. S.D.1996); *Stamps*, 865 S.W.2d at 397–98; *State v. Jones*, 854 S.W.2d 60, 64 (Mo.App. E.D.1993).

■ Defendant includes, as a part of this point, the trial court's failure to grant his request for a continuance because of the endorsement of the witnesses in question. The decision to grant or deny a continuance is a matter of trial court discretion, and an appellate court will not interfere unless it clearly appears that such discretion has been abused. *Patrick*, 920 S.W.2d at 638. The party requesting the continuance bears the burden of showing prejudice, and a very strong showing is required to demonstrate an abuse of discretion. *Id.*

■ As indicated above, Defendant has not demonstrated that he was prejudiced by the trial court permitting the endorsement of the witnesses in question. Additionally, there is no indication in the record before us that the motions for continuance were in writing or supported by affidavit as required by Rule 24.09. This fact alone is sufficient reason to deny the application. *State v. Sneed*, 874 S.W.2d 489, 491 (Mo. App. W.D.1994); *State v. Pollock*, 735 S.W.2d 179, 181 (Mo.App. S.D.1987). Accordingly, this portion of the point is without merit.

■ Finally, Defendant contends, as a part of this point, that the trial court erred in denying his motion to strike the testimony of witness Brian Stoner, one of the witnesses contained in the amended endorsement filed more than one month before trial. Defendant does not, however, support that contention with argument and the citation of supporting authority in the argument portion of his brief. Failing to do so results in there being nothing for the court to review. *State v. Nicklasson*, 967 S.W.2d 596, 608 (Mo.banc 1998). Defendant's first point is denied.

■ In his second point, Defendant contends that the trial court erred in denying his motion for judgment of acquittal because "at best," possession of marijuana by Defendant was shared with Trooper Rousset and in the absence of additional inculpating evidence showing conscious and knowing possession by Defendant, the evidence was insufficient, as a matter of law, to form the basis of a conviction for possession of marijuana with intent to distribute.

■ Defendant's argument under this point deals almost exclusively with what he characterizes as the deficiencies of the evidence concerning the concept of possession. "[P]ossessing a controlled substance" is defined, in part, in

§ 195.010(33) as having the substance on his person or within easy reach and convenient control. In this regard, we note that to sustain a conviction for possession of a controlled substance, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of this substance. *State v. Fuente,* 871 S.W.2d 438, 442 (Mo. banc 1994). Both possession and knowledge may be proved by circumstantial evidence. *Id.* Here, we have concluded that the evidence and reasonable inferences therefrom, were sufficient for a reasonable finder of fact to conclude that Defendant possessed the marijuana, which he received from Trooper Rousset on the day in question.

Based on that evidence and the reasonable inferences deducible therefrom, the trial court could have found that Defendant was involved in the distribution of marijuana with Ben and Kim Jeckle, and therefore would know marijuana when he saw it, and could judge its weight and street value; that Defendant kept marijuana which apparently belonged to either or both Ben and Kim Jeckle in his home; that the marijuana was kept for the purposes of distribution; that Defendant distributed marijuana through the efforts of his daughter by supplying her with marijuana and accepting the proceeds from her; that he was responsible to the Jeckles for the safe keeping of the marijuana and the proceeds from its sale; that he indicated to Trooper Rousset a knowledge of the efforts of Kim Jeckle to retrieve the marijuana and/or money from Matthew, and indicated what would be acceptable as recompense from Matthew; that he engaged in conversations with Trooper Rousset about the return of the marijuana from Matthew; and that he accepted possession of the money and a bag containing marijuana when Trooper Rousset delivered them to him immediately prior to his arrest. This evidence would permit the conclusion that at the time of this delivery, Defendant knew the bag contained marijuana in that he was told by Trooper Rousset that he was there to return approximately one pound of the substance, and Defendant looked in the bag containing the marijuana and gave an accurate estimate of its weight and street value. The evidence also would permit the reasonable trier of fact to conclude that Defendant took possession of the bag of marijuana from Trooper Rousset by holding it in is hands and acknowledging that the $1,000 worth of marijuana, together with the $1,000 in cash, left $1,000 unaccounted for. A reasonable person could conclude that by taking the bag and making these statements, Defendant had, and intended to exercise, possession over the bag of marijuana that had been delivered for the purpose of attempting to settle the "debt" of Matthew. We are persuaded that in the instant case, the evidence was sufficient to support a conviction for possession of the marijuana.

■■■■ Although Defendant's only argument concerning the sufficiency of the evidence to support a finding that he intended to distribute or deliver the marijuana is that "even if [Defendant] possessed marijuana there is no evidence to support the idea that he intended to distribute it to anyone," and absent evidence of intent to distribute the conviction must fail. No authority is cited in support of this proposition. Absent proper explanation concerning why no authority is cited, points relied on without citations are deemed waived or abandoned. *State v. Higgins,* 852 S.W.2d 172, 175 (Mo.App. S.D.1993). Notwithstanding the above, we have made a review for plain error in this regard. "Distribute" is defined in § 195.010(14): "to deliver other than by administering or dispensing a controlled substance." There was ample evidence from which the trial court could have found that Defendant intended to deliver the marijuana to either

or both Kim and Ben Jeckle. The trial court could have also found that Defendant intended to deliver some of the marijuana to his daughter to resume her selling activities. Under these circumstances we find no plain error affecting substantial rights which resulted in manifest injustice or a miscarriage of justice. Rule 29.12. Defendant's second point is denied.

The judgment is affirmed.

MONTGOMERY, J. and BARNEY, J., concur.