STATE of Missouri,
Plaintiff/Respondent,

v.

Joshua GRAHAM,
Respondent/Appellant.

No. ED 103897

Missouri Court of Appeals,
Eastern District,
**DIVISION THREE.**

Filed: April 25, 2017

Julie E. Regenbogen, St. Louis, Missouri, for Appellant.

Karen L. Kramer, Jefferson City, Missouri, for Respondent.

**Opinion**

Lisa S. Van Amburg, Judge

Appellant, Joshua Graham, appeals from his conviction and sentence for possession of a controlled substance and unlawful use of drug paraphernalia. We reverse and remand.

### Background

As indicated in the trial court's order and memorandum, there is no real dispute about the facts of this case. Graham was hospitalized at Barnes–Jewish Hospital on October 2014. An attending physician wrote an order providing that Graham could be administered oxycodone for pain. Under such order, the nurse was to deliver

the tablet to Graham, observe him take it by mouth, and record the event.

On October 12, 2014, the nurse provided an oxycodone tablet to Graham and testified that she believed he had taken it by mouth as directed pursuant to the order. Shortly thereafter, the nurse responded to a call light from the bathroom in Graham's hospital room. She found Graham on the floor with a needle in his arm and crushed powder in a spoon nearby. The trial court found that "[t]here can be no doubt that [Graham] had used the crushed oxycodone tablet to inject himself."

Graham was charged by indictment with possession of a controlled substance and possession of drug paraphernalia with intent to use. Graham waived jury trial and, on October 30, 2015, the cause proceeded to a bench trial. The trial court found Graham guilty of both charges. Graham subsequently filed a "Motion to Reconsider",[1] claiming that he obtained the drug pursuant to the valid order of a licensed medical practitioner. As a result, Graham argued there was insufficient evidence that Graham committed the offenses charged because his possession of oxycodone was pursuant to a valid prescription. The court held that the plain language of the statute evinces a legislative intent to exempt controlled substances that are obtained in accordance with a prescription or physician's order; however, it did not exempt persons who converted the substance to a different form for a different, non-therapeutic purpose. As a result, the court denied Graham's motion to reconsider and sentenced him to three years for possession and a concurrent 90 days for unlawful use of drug paraphernalia. This appeal follows.

1. The trial court found that a "Motion to Reconsider" was not contemplated by the Rules of Criminal Procedure. Therefore, the court treated his motion as a motion for new trial.

### Standard of Review

In a court-tried case, the sufficiency of the evidence is determined by the same standard as in a jury-tried case, and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Downen*, 3 S.W.3d 434, 435 (Mo. App. S.D. 1999). In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence, but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored. *Id.* However, "[s]tatutory interpretation is a question of law, and questions of law are reviewed de novo." *State v. Downing*, 359 S.W.3d 69, 70 (Mo. App. W.D. 2011) (internal citations omitted).

### Discussion

Graham challenges the sufficiency of the evidence to support his conviction on both charges. In Point I, he argues that the State failed to prove beyond a reasonable doubt that Graham committed the offense of possession of a controlled substance because he possessed oxycodone pursuant to a valid prescription. In Point II, Graham argues that because he possessed the controlled substance lawfully, the State could not prove beyond a reasonable doubt that he committed the offense of unlawful use of drug paraphernalia because the statute requires either the presence of an unlawful controlled substance or evidence that paraphernalia was to be used in connection with an unlawful substance.

Mo. Rev. Stat. § 195.202.1 provides "Except as authorized by sections 195.005 to 195.425, it is unlawful for any person to

possess or have under his control a controlled substance."[2] Mo. Rev. Stat. § 195.180.1 provides:

A person may lawfully possess or have under his control a controlled substance if such person obtained the controlled substance directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of a practitioner's professional practice or except as otherwise authorized by sections 195.005 to 195.425.

In essence, the statute provides the defendant with a defense to a possession charge, and the burden of proof is on the defendant to show that his possession of a controlled substance was lawful and fell within the statute. § 195.180.

Graham argues that the burden of proof requires only that he demonstrate he obtained oxycodone pursuant to a valid prescription or practitioner's order. He argues that the plain language of § 195.180 does not criminalize the misuse of lawfully-held prescriptions. He further argues that he met his burden under § 195.180 because he proved that he lawfully obtained the oxycodone pursuant to a valid order from Barnes–Jewish Hospital and that the legality of that possession was unaffected by the method by which he took the substance (i.e., whether he took it "as prescribed"). The State argues in response that the evidence adduced at trial showed that the oxycodone at issue was not obtained pursuant to an order of a practitioner because the manner in which the drug is administered or used is relevant in considering whether the drug in question had been obtained directly from or pursuant to a practitioner's order. We disagree.

We look to the plain language of the statute to determine whether the legislature intended to allow the conviction of an individual who converted to a different form a drug obtained pursuant to a valid order for a different, non-therapeutic purpose. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *State v. Grubb*, 120 S.W.3d 737, 739 (Mo. banc 2003). Statutory terms not defined by the legislature are considered in "their plain or ordinary and usual sense." *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002). "Where the language of a statute is clear and unambiguous, there is no room for construction." *Ryder Student Transp. Servs., Inc. v. Dir. of Revenue*, 896 S.W.2d 633, 635 (Mo. banc 1995)).

We agree with the trial court that "pursuant to" is plain and unambiguous and denotes receipt of a controlled substance in compliance and consistent with an express prescription or order. However, it is undisputed that Graham received the oxycodone tablet from the nurse, who provided the tablet pursuant to an order. The moment Graham received that tablet, he obtained it lawfully and pursuant to a valid order. The plain language of the statute does not criminalize the misuse of lawfully-held prescription drugs because, as Graham points out in his Brief, the statute does not mention the methodology of use or administration. We decline to interpret the plain language of the statute to require a defendant to not only show that he obtained the drug pursuant to a valid prescription, but also that he strictly complied with the order or prescription's directives.

■ Furthermore, the rule of lenity mandates that all ambiguity, if any, in a criminal statute be resolved in a defen-

**2.** All references in this opinion shall be to the criminal code prior to its restructuring and

renumbering under L.2014, S.B. No. 491, § A, eff. Jan. 1, 2017.

dant's favor. *State v. Harper*, 855 S.W.2d 474, 479 (Mo.App.W.D.1993). Under this rule, we are to construe a criminal statute strictly against the government and liberally in a defendant's favor. *Goings v. Missouri Department of Corrections*, 6 S.W.3d 906, 908 (Mo. banc 1999). "Any doubt as to whether the act charged and proved is embraced within the prohibition must be resolved in favor of the accused." *State v. Jones*, 899 S.W.2d 126, 127 (Mo. App.E.D.1995). The plain language of the statute only required a defendant to prove that he possessed a controlled substance pursuant to a valid prescription or order. "A court may not add words by implication to a statute that is clear and unambiguous." *State ex rel. Young v. Wood*, 254 S.W.3d 871, 873 (Mo. 2008). We decline to interpret the language of § 195.180 to render the defense unavailable to defendants who misuse a controlled substance that was in their possession pursuant to a valid order or prescription.

■ As a final matter, criminal statutes must, as matter of due process, put defendants on advance notice of the illegality of their contemplated actions. *See State v. Young*, 695 S.W.2d 882, 886 (Mo. banc 1985). A finding that Graham misused the prescription and was therefore barred from asserting the defense under § 195.180 would violate principles of due process because the average patient might not strictly follow a prescription's directives concerning the timing to take the prescription or conversion of the prescription into a different form. For instance, a patient with difficulties swallowing a pill might crush the pill and ingest it with apple sauce. This crushing of the pill does not, and should not, render § 195.180 inapplicable to this patient, nor would the aver-

age patient assume that her conduct might result in unlawful possession of a controlled substance. The patient obtained the drug pursuant to a valid prescription, which is exactly what a defendant is required to prove under § 195.180. Although Graham certainly misused the oxycodone prescription, that misuse does not bar him from asserting the affirmative defense under § 195.180.

Neither party cites Missouri case law directly on point, and we find none. Instead, Graham relies on an Arkansas Supreme Court case, *Wilson v. State*, 290 Ark. 397,720 S.W.2d 292 (1986), which we find instructive.[3] There, Wilson persuaded the nurse to allow him to take a syringe containing the drug Talwin to his home, where he intended to deliver the syringe to his wife. *Id.* at 293. The parties conceded that Wilson had a valid prescription for Talwin, to be administered by injection. *Id.* at 293. Like Graham, Wilson argued that he was in lawful possession of the oxycodone because he obtained it pursuant to a valid prescription. *Id.* The State argued that the possession became unlawful when Wilson failed to take the drug as directed; that is, to obtain an injection from the nurse. *Id.* The Supreme Court of Arkansas disagreed, holding that Wilson's possession of the Talwin pursuant to a prescription was lawful. *Id.* at 293. It further disagreed with the State's contention that ignoring the issue of prescribed use will essentially become "peddler's licenses for patients willing to sell their prescribed substances on the street." *Id.* Instead, the court opined that it was limited in its review to the charge issued by the State, i.e., unlawful possession of a controlled substance, not possession of a controlled substance

---

**3.** As correctly pointed out by the trial court, § 195.180 is part of a uniform controlled substances law, and so the construction of the statute by other courts can be persuasive authority in Missouri.

with an intent to deliver.[4] *Id.* As a result, it found that Wilson's possession of the Talwin pursuant to a prescription was lawful, and therefore, lawful under the statute. *Id.* at 293.

Like *Wilson*, Graham obtained and was in possession of oxycodone pursuant to a valid order.[5] If we apply the reasoning in *Wilson* and limit our review to whether Graham's possession of the oxycodone itself was lawful, we must find in favor of Graham.

Graham also cites the unpublished *People v. Walters*, arguing that it stands for the proposition that possession of a lawful prescription and the misuse of that prescription are two separate issues. 2014 IL App (2d) 130712-U, 2014 WL 1572635. In *Walters*, Walters's driver's license was suspended for his unlawful use of controlled substances. *Id.* at *1. Walters argued he fell within the statutory exception for use of a controlled substance pursuant to a lawful prescription. *Id.* at *3. The court agreed and revoked the suspension, holding that a person cannot have his driver's license summarily suspended for his use of a controlled substance pursuant to a lawful prescription. *Id.* The *Walters* court ultimately determined the narrow issue of whether a defendant may rely on a prescription for a controlled substance to obtain a rescission of a summary suspension. *Id.* at *5. The court held in the affirmative, but opined that evidence of the misuse of a prescription could remove a defendant from the protection of the relevant statute under Illinois law. *Id.* This dicta, however,

is not binding on this court and merely highlights the limitations of the statute at issue.

Statutes are to be construed in accordance with the usual principles of statutory construction, and we apply the plain and ordinary meaning of the words of the statute. We agree with the trial court that the phrase "pursuant to" is plain and unambiguous and denotes receipt of a controlled substance in compliance with a prescription or order. The evidence presented at trial showed that Graham obtained the oxycodone in compliance with a valid prescription. Nothing in the language of the statute requires compliance with the doctor's directives regarding ingestion or administration of the controlled substance. Although we acknowledge this is not a case of mere misuse of a prescription, Graham satisfied his burden of proof under the plain language of § 195.180. Point I is granted.

In Point II, Graham argues that his conviction of possession of drug paraphernalia with intent to use must be overturned because he was in lawful possession of a controlled substance, thereby negating an element of the crime. The State argues that the plain language of § 195.233 does not include an affirmative defense of lawful possession of a controlled substance.

The plain language of § 195.233.1 provides:

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate,

---

4. The court opined that for the commission of the felony of possession of a controlled substance with the intent to deliver, it is immaterial whether the possession is lawful or unlawful, provided that the intent exists. Had the State charged Wilson with a different felony, the outcome would likely have been different.

5. Although counsel for the State indicated at oral argument that there was some dispute regarding the origin on the oxycodone, the trial court found that "[t]here can be no doubt that [Graham] had used the crushed oxycodone tablet to inject himself." We defer to the factual findings of the trial court. *State v. Jackson*, 410 S.W.3d 204, 212 (Mo. App. W.D. 2013)

grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance in violation of sections 195.005 to 195.425.

In Point I, we found that the trial court erred when it convicted Graham because he properly asserted an affirmative defense to the possession charge. Here, the statute requires a defendant to introduce into the human body a controlled substance *in violation of sections 195.005 to 195.425.* (emphasis added). We found that Graham was in lawful possession of a controlled substance, and therefore, he was not "in violation" of § 195.202. Point II is granted.

### *Conclusion*

The trial court erred when it convicted Graham of possession of a controlled substance and unlawful use of drug paraphernalia and, therefore, the judgment must be reversed and remanded with instructions that the trial court enter a judgment of acquittal and order Graham discharged.

Angela T. Quigless, P.J., and Robert G. Dowd, Jr., J., concur.