STATE of Missouri, Plaintiff–Respondent,

v.

Daniel W. THOMAS, Defendant–Appellant.

No. 21813.

Missouri Court of Appeals, Southern District, Division Two.

March 18, 1998.

Rosemary E. Percival, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephans, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, Judge.

Daniel Thomas (Defendant) was convicted by a jury of two counts of burglary in the second degree (both Class C felonies) in violation of § 569.170[1] and one count of burgla-

1. All statutory references are to RSMo 1994 unless otherwise indicated.

ry in the first degree (a Class B felony) in violation of § 569.160. The court found Defendant was a prior and persistent offender under § 558.016 and § 557.036. As punishment, Defendant was ordered to serve concurrently two twenty-year terms and one thirty-year term in the department of corrections.

On appeal, Defendant presents three points: (1) the trial court erred in allowing late endorsement of a prosecution witness and overruling a motion for continuance in response to the late endorsement; (2) the trial court erred in *sua sponte* failing to instruct the jury to disregard or *sua sponte* declare a mistrial in response to certain cross-examination testimony; and (3) the trial court erred in barring defense impeachment of a prosecution witness. We affirm.

## FACTS

Defendant does not challenge the sufficiency of the evidence.

On September 30, 1996, a burglary occurred at Harmon Glass in Joplin, Missouri. Entry to the building was apparently gained by removal of an air conditioner. Two fax machines, a tool box, glass cutting tools, and large suction cups used in the handling of glass were stolen from Harmon Glass.

On October 1, 1996, a burglary occurred at a home on Wisconsin Street in Joplin. Burglars entered the house after cutting a kitchen window in the area of the window's lock. The burglars took $1,422 in cash from a wallet inside the house. The owner of the home was present but slept through the burglary and theft.

On October 12, 1996, a burglary occurred at Parkview Animal Hospital in Joplin. All of the cabinets in the building were ransacked. Several drugs, surgical instruments, a stethoscope, and $50 were taken from the animal hospital. While the burglars could have entered the building by breaking glass on the front door, there was evidence that a former employee still possessed a key to the building.

Defendant was arrested and eventually charged with burglaries at Harmon Glass, the Wisconsin Street house, and Parkview Animal Hospital. At Defendant's trial, Mindi McCaslin and John North testified for the prosecution. McCaslin, a former consort of Defendant, was not involved in these crimes. However, she had pending against her a stealing charge in Newton County. As to North, he testified after reaching a plea agreement in which he entered a guilty plea to three felony charges. The testimony of McCaslin and North constituted the only evidence that directly linked Defendant to the three burglaries.

For five weeks McCaslin lived with Defendant, John North, Donny Adams, Cecil Hopkins, and others at a house on Kentucky Street in Joplin. During this five-week period, McCaslin was romantically involved with Defendant. McCaslin ended her relationship with Defendant and moved out of the Kentucky Street house on October 24, 1996.

McCaslin testified that she saw Defendant dressed all in black and wearing gloves on the night of the burglary at the Wisconsin Street house. McCaslin and Defendant took a drive that same evening. As they passed the Wisconsin Street house, Defendant told McCaslin that he and John North had come from that home. He also told McCaslin that the occupant of the house slept through the burglary, that he had made a triangular shaped cut in a window, and that he had stolen cash from a wallet inside the house. During this drive, Defendant also admitted burglarizing Harmon Glass. After the drive with Defendant, McCaslin saw glass cutting tools and suction cups in the Kentucky Street house.

McCaslin testified that the night of the Parkview Animal Hospital burglary Defendant, John North, and Cecil Hopkins dressed themselves all in black and put on gloves. McCaslin said Defendant told her that he and the others had keys to the animal hospital given to them by a former employee. McCaslin said that sometime later Defendant told her about items taken from the animal hospital. She also stated she saw some of the items taken from Parkview Animal Hospital.

McCaslin testified that John North, Donny Adams, and Defendant gave her money to

rent a storage unit. She further testified that Defendant and Cecil Hopkins retained keys to the storage unit. McCaslin eventually took police to the unit and gave them permission to search. Police discovered items stolen from Harmon Glass in the storage unit.

Prosecution witness John North was endorsed by the State the day before trial. North testified that he helped Defendant and others in the Harmon Glass and Parkview Animal Hospital burglaries. He denied any involvement in the Wisconsin Street home burglary.

Defendant was convicted of two counts of second degree burglary and one count of first degree burglary. He was sentenced to two 20–year terms of imprisonment and one 30–year term of imprisonment all to run concurrently. This appeal followed.

## DISCUSSION AND DECISION

*Point I: Late Endorsement and Motion for Continuance*

Defendant's first point on appeal contends the trial court abused its discretion by allowing the late endorsement of John North and denying Defendant's motion for a continuance.

 Rule 23.01(f)[2] allows the State to endorse additional witnesses after "notice to the defendant upon order of the court." A trial court enjoys broad discretion in allowing the late endorsement of witnesses. *State v. Sweet,* 796 S.W.2d 607, 613[9] (Mo.banc 1990). In determining whether a trial court abused this discretion, an appellate court will consider the following factors: (1) whether the defendant waived the objection; (2) whether the State intended to surprise the defendant or acted deceptively or in bad faith intending to disadvantage the defendant; (3) whether the defendant was, in fact, surprised and suffered disadvantage; and (4) whether the type of testimony given might have been readily contemplated by the defendant. *Sweet,* 796 S.W.2d at 613; *State v. Stokes,* 638 S.W.2d 715, 719[2] (Mo.banc 1982). The main consideration is whether the late disclo-

sure of witnesses resulted in fundamental unfairness or prejudice to substantial rights of the defendant. *State v. Banks,* 922 S.W.2d 32, 40[9] (Mo.App.1996).

Defendant did object to the late endorsement. However, nothing in the record shows intention on the State's part to surprise Defendant with North's testimony. Further, there is no evidence of bad faith or deception by the State. The record does not show surprise or disadvantage. Finally, Defendant cannot show that North's testimony was not readily contemplated.

██ Defendant and North once were co-defendants. Defendant was aware that North had negotiated a plea agreement with the State and entered a plea the week before Defendant's trial. Defense counsel was in contact with North's attorney who asked defense counsel not to speak with North "unless he was endorsed." Thus, Defense counsel should have anticipated that North would be called as a witness. Defense counsel did have an opportunity to speak with North before trial. Much of this was admitted by defense counsel during pre-trial when he objected to the endorsement.

"THE COURT: Well, the 11th-hour endorsement is something, though, that he, your client knew everything that was going on about him throughout the procedure?

"MR. GENISIO [defense counsel]: Sure, Judge. I had, originally, I had contacted Victor Head, who represented Mr. North. After I knew Mr. North had pled guilty and there was a possibility that—I knew that part of his plea bargain was to testify truthfully if they wanted him to. I contacted Victor Head, and Mr. Head didn't want me speaking to his client unless he was endorsed, so I didn't have a chance to do anything until yesterday when he was actually endorsed."

On this record, we cannot find that Defendant suffered fundamental unfairness or prejudice to his substantial rights from this belated witness endorsement. This part of Point I is denied.

 We now turn to Defendant's motion for continuance made after the State en-

. Unless otherwise indicated all references to rules are to Missouri Rules of Court 1997.

dorsed John North. The record reveals that defense counsel requested the continuance to "depose witnesses, follow up on leads." A trial court has broad discretion in ruling on motions for continuance. *State v. Brown*, 762 S.W.2d 471, 475[8] (Mo.App.1988). Before an appellate court will reverse a trial court's decision denying a continuance, there must be a strong showing of abuse and prejudice. *State v. Taylor*, 944 S.W.2d 925, 930[2] (Mo.banc 1997).

█ As previously noted, Defendant knew approximately a week before trial that North had pled guilty and that the State expected North to testify truthfully if he were called as a witness. Under the circumstances, Defendant should have reasonably expected North to testify and could have prepared for that possibility. As a part of that preparation, Defendant could have deposed North. Rule 25.12. A defendant may take depositions "upon filing of the indictment or information." Rule 25.02. *See also State ex rel. George v. Jones*, 929 S.W.2d 256, 257[2] (Mo. App.1996).

Here, when North pled guilty, his Fifth Amendment right against self-incrimination was no longer a potential impediment to deposing him. Upon North's plea, Defendant did not have to wait for North's endorsement before deposing him. It was not necessary to delay investigation until North's attorney agreed to an interview. Had North refused to testify freely at deposition, Defendant would have been entitled to protection through the sanction of striking all or part of North's testimony. *See State v. Wilkinson*, 606 S.W.2d 632, 637 (Mo.banc 1980).

Further, defense counsel spoke with North before trial. If North said something unexpected to defense counsel during the interview, Defendant never explained the surprise to the trial judge during the pre-trial conference. In addition, Defendant enjoyed two continuances before moving for another continuance on the eve of trial.

Under the circumstances, we do not find the trial court abused its discretion in denying Defendant's motion for continuance. Point I is denied.

*Point II: Statements Made by Prosecution Witness Hobson*

Defendant's second point concerns a portion of Detective Mike Hobson's testimony during cross-examination and the trial court's treatment of Defendant's objection to the testimony:

"[Counsel]: Officer, you know Dan Thomas, don't you? "[Hobson]: Yes I do.

"[Counsel]: And that's because sometime ago he was an assistant manager at Tanglewood Apartments?

"[Hobson]: He, when I first talked to him, he wasn't an assistant manager at that time.

"[Counsel]: Okay. But he evidently was assisting you in some investigation, and that's how you originally met him?

"[Hobson]: Yeah, he had some information on another case that I was investigating, plus he was a suspect on a burglary that I was investigating at Tanglewood, also.

"[Counsel] Judge, I've got to object to that. That's not part of what I asked."

At that point, the prosecutor and defense counsel approached the bench. During the conference that followed, defense counsel's only effort to clarify the objection was as follows: "Judge, by definition, that's an evidentiary harpoon." The trial judge responded: "I think you asked the question, and you kind of opened it up." Defense counsel replied: "Well, I know Judge." Next, the trial judge asked: "Is that an objection?" Defense counsel's only answer was a nod of his head. The trial court overruled Defendant's objection. Defendant made no other explanation or comment concerning his objection nor did he ask the court to take corrective action.

Defendant now argues that the trial court committed reversible error when it overruled his objection to Hobson's testimony. He also charges the trial court erred in not *sua sponte* declaring a mistrial or *sua sponte* instructing the jury to disregard Hobson's comments. He asserts that Hobson's testimony amounted to "inadmissible evidence of an uncharged crime ... and served only to show the jury that [Defendant] had a propensity to commit burglary."

Defendant's contentions are not preserved for our review. "To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory." *State v. Driver*, 912 S.W.2d 52, 54[1] (Mo.banc 1995). Here, Defendant's objection was too general to present anything for appellate review. "A trial judge's function is not to help counsel in trying cases; consequently, a trial judge should act *sua sponte* only in exceptional circumstances." *State v. Kelley*, 953 S.W.2d 73, 89[37] (Mo.App.1997) (citing *State v. Enloe*, 914 S.W.2d 44, 46[2] (Mo.App.1996)). This is not one of those "exceptional circumstances."

Furthermore, the trial court did not plainly err because there was no manifest injustice in overruling the objection to the admission of this evidence. *See* Rule 30.20. Officer Hobson's statements came during cross-examination. In the trial judge's view, defense counsel "opened [the subject] up" by asking if Hobson first met Defendant as he [Hobson] was conducting "some investigation." We are not persuaded that the trial judge's assessment was wrong. Defendant cannot complain about evidence elicited by his own counsel. *Kelley*, 953 S.W.2d at 89[35]; *State v. Middleton*, 854 S.W.2d 504, 516 (Mo.App.1993).

Point II is denied.

*Point III: Impeachment of Prosecution Witness McCaslin*

During cross-examination of Mindi McCaslin, the following exchange took place:

"[Counsel]: Ms. McCaslin ... I want to go back to something that [the prosecutor] said. You will lie when it benefits you, won't you?

"[McCaslin]: No.

"[Counsel]: Well, Let's talk about that for a minute. Let's talk about the story you told the police department when they picked you up to talk to you about the robbery that you staged there. You lied to the police didn't you?

"[Prosecutor]: *I'm going to object, your honor. May we approach?*"

The prosecutor argued that whether the witness had ever lied before was irrelevant, that defense counsel was attempting improper impeachment on a prior bad act, and was also attempting improper impeachment on a collateral matter. The trial court sustained the prosecutor's objection.

On appeal Defendant argues that the trial court abused its discretion by preventing impeachment of McCaslin on this subject. Preliminarily, we note that Defendant did not preserve this matter in his motion for new trial. Because Defendant did not raise this matter in his post-trial motion, it is not preserved for review on appeal. *State v. Kobel*, 927 S.W.2d 455, 461[12] (Mo.App.1996). This issue can only be reviewed for plain error. Rule 30.20. Review for plain error should be used sparingly. *State v. Clemons*, 946 S.W.2d 206, 224[46] (Mo.banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). Under plain error review an appellant must show that a manifest injustice or miscarriage of justice will result if the error is left uncorrected. *Id.* at 224[45].

Defense counsel conducted a detailed cross-examination of McCaslin about her part in a staged robbery at a McDonald's restaurant. Defense counsel brought out that, although McCaslin had been charged in Newton County with felony stealing related to the McDonald's incident, she was never arrested, jailed, required to post bond, or compelled to appear in court on that charge. When asked if she knew she needed "to help the government in this case," McCaslin answered, "yes." Thus, Defendant could show areas of possible bias for the State.

Additionally, Defendant cross-examined McCaslin at length about her past relationship with Defendant, attempting to show McCaslin's bias against Defendant. From McCaslin the jury learned that she and Defendant were cohabiting when these crimes were committed; that they split up when Defendant started seeing another woman; that McCaslin was angry, hurt, and upset over Defendant's seeing the other woman; and that McCaslin blamed Defendant for giving her a sexually transmitted disease. Therefore, Defendant explored McCaslin's potential bias toward Defendant.

We find no miscarriage of justice or substantial injustice flowing from the trial court's ruling on the collateral issue of whether McCaslin lied when the police first questioned her about the McDonald incident. Point III is denied.

 Defendant's conviction and the trial court's judgment of sentence are affirmed.[3]

PARRISH, P.J., and MONTGOMERY, C.J., concur.

---

**3.** Defendant filed a motion to file affidavits taken after trial and make them part of the record on appeal. This motion was taken with the case. The motion is denied. An appellate court is limited to consideration of the evidence in the record. *State v. Pendergrass,* 869 S.W.2d 816, 819 n. 1[2] (Mo.App.1994).