**STATE of Missouri, Respondent,**

v.

**Harlos R. COOK, Appellant.**

**No. WD 53553.**

Missouri Court of Appeals,
Western District.

Sept. 21, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 2, 1999.

Application to Transfer Denied
Dec. 21, 1999.

---

Sean D. O'Brien, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

SPINDEN, Presiding Judge.

Harlos R. Cook appeals the circuit court's judgment convicting him of murder in the second degree, of armed criminal action, and of assaulting a law enforcement officer. Cook contends that (1) the state violated its duty to disclose a witness before trial and that this resulted in a violation of his right to due process; (2) the circuit court erred in allowing the state to present evidence concerning Cook's silence after his arrest; (3) the circuit court erred in not preventing prosecutorial misconduct; and (4) the circuit court erred in denying his requests to adjourn the trial at a reasonable time.

We issued an opinion on November 24, 1998, reversing Cook's convictions and remanding to the circuit court for a new trial. We granted the state's motion for rehearing filed on December 8, 1998, to reconsider the issue of discovery rules and sanctions for violations thereof. After reconsideration, we affirm the circuit court's judgment.

A jury convicted Cook of killing Jennifer Henry on August 22, 1995, at about 8:00 P.M. Cook shot Henry without apparent provocation as she walked through a courtyard of a Riverside apartment complex where she and Cook lived. Cook's defense included mental disease or defect. A jury rejected Cook's defense and convicted him of second-degree murder, armed criminal action, and second-degree assault of a law enforcement officer.

In his appeal, Cook contends that the circuit court erred in overruling his re-

quest that it sanction the state for deliberately not endorsing, and then harboring and concealing, a material witness, Lacy Mims, a state rebuttal witness. Cook contends that the state's concealing its plans to use Mims violated his right, guaranteed by Rule 25.03, that the state inform him before trial of its evidence against him. This violated, he argues, his due process rights guaranteed by Missouri's and the United States' constitutions.[1]

The state did not endorse Mims as a witness or list him in response to Cook's request for discovery. Cook's attorneys learned five days before trial, on September 25, 1996, during a deposition of the state's rebuttal psychiatrist, John Rabun, that Rabun had discussed the case in a telephone conversation with Mims. Rabun testified during the deposition that Mims had told him that he saw Cook looking into Henry's apartment window on the day of the shooting.

At the beginning of trial, the circuit court granted Cook's request to preclude any references to Mims or Mims' statements to Rabun. At that time, the state still had not endorsed Mims as a witness or provided Cook with his address or telephone number. Nonetheless, that same day, the state sent officers to Mims' residence in Tennessee with a subpoena and an airline ticket to Kansas City. On October 1, 1996, Mims arrived in Kansas City, and the state paid for his motel stay in Platte City. The state did not tell Cook that Mims was in the area.

On October 3, 1996, the trial's last day, the prosecutor called Mims as a rebuttal witness. Cook's attorneys immediately objected, complaining of surprise. The circuit court refused Cook's request that it exclude Mims as a witness or that it grant a continuance so Cook could depose Mims. The circuit court granted Cook's request for time to interview Mims. The interview lasted about 30 minutes. When the trial resumed, Cook renewed his objection to Mims' testimony, but the circuit court overruled it.

Rule 25.03(A)(1) requires the state to disclose the names and last known addresses of witnesses whom it intends to call at any hearing or trial if the defendant requests it and if it has the information or can obtain it. The state also must give the witness' statements to a defendant. Compliance with this and other criminal discovery rules is not discretionary. *State v. Whitfield,* 837 S.W.2d 503, 507 (Mo. banc 1992). The Supreme Court said in *Whitfield* that the purpose for its discovery rules in criminal cases was to prevent surprise at trial: "Rules 25.03 and 25.05 clearly intend to allow both sides to know the witnesses and evidence to be introduced at trial. Rule 25.07 allows for the examination and testing of exhibits of both sides. Rule 25.12 allows the defense to depose any potential witnesses." *Id.* at 508.

While compliance with these discovery rules is mandatory, violations are not reversible error unless they result in fundamental unfairness or prejudice to a defendant's substantial rights. *State v. Smothers,* 605 S.W.2d 128, 131 (Mo. banc 1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 203 (1981). The circuit court has much latitude in determining what the remedy for a violation should be, *State v. Kilgore,* 771 S.W.2d 57, 66 (Mo. banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989), but it is obligated to tailor a fundamentally fair remedy. Rule 25.16 permits the circuit court to admit the evidence if the defendant has an adequate opportunity to prepare to meet the evidence. *State v. Matheson,* 919 S.W.2d 553, 559–60 (Mo.App.1996). Moreover, to require the granting of a new trial, the undisclosed evidence must be "material." *State v. Kezer,* 918 S.W.2d 874, 882 (Mo.App.1996). "Evidence is material, 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result ... might have

---

1. *See* Mo. Const. art. I, § 10 (1945), and U.S. Const. amend. XIV.

been different.' " *Id.* (emphasis omitted) (quoting *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

■ Cook argues that Mims was a material witness because his testimony produced the only link between Cook and Henry. This link, he asserts, prejudiced his contention that he had no motive for shooting Henry—that the shooting resulted from his mental disease or defect and not from deliberative thought. He said that, because Mims was a surprise witness, he did not have a sufficient opportunity to prepare adequately for rebutting or for cross-examining Mims. He complains that, at a minimum, the circuit court should have afforded him an opportunity to depose Mims.

Assuming that the prosecutor violated discovery rules, we fail to discern why the remedy fashioned by the circuit court, giving Cook time to interview Mims, was not sufficient to cure the violation. The key point of Mims' testimony was that, before the shooting, Cook had peered into a window of Henry's apartment. Cook's cross examination, however, gave the jury much reason to doubt Mims' testimony. Cook established that Mims was at work during the time in which he claimed to have seen Cook peering in the window. He also established that the state had paid Mims' expenses in returning to Missouri to testify, that Mims was the only person who saw Cook looking into Henry's window, that Mims did not tell the police about Cook peering in the window, and that Mims was not able to identify the window through which Cook was peering.

Cook's cross-examination apparently negated Mims' testimony. Although the state used Mims' testimony of Cook peering through Henry's window to argue that Cook had the culpable mental state for first degree murder, the jury rejected the argument. It found Cook guilty of second-degree murder, not first-degree murder. Cook's cross-examination obviously was

sufficient to neutralize the effect of Mims' testimony.

■ Moreover, although due process requires the state to identify a rebuttal witness before calling him or her at trial if the defendant relies on the defense of mental disease or defect, such is the case only if the rebuttal witness is called to rebut the defense of mental disease or defect. *State v. Curtis,* 544 S.W.2d 580, 582 (Mo. banc 1976) (relying on *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). The state did not call Mims to rebut Cook's defense of mental disease or defect. The state called him to counter the testimony of a defense witness who testified that his investigation revealed no link between the victim and Cook. We reject Cook's point.

■ Cook also argues that the circuit court erred by not acting *sua sponte* to remedy the prosecutor's asking Riverside police officer Gary M<sup>c</sup>Mullin whether Cook made "any statements" when officers arrested him, whether Cook made "any statements of devils or demons" when officers were "booking" him, and whether Cook made "any statements" when officers were strapping him into a car to take him to jail. Cook acknowledges that he did not preserve the issue, but he asks us to review it as "plain error" pursuant to Rule 30.20.

■ This rule authorizes us to review "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The rule does not explain how we are to determine whether a plain error has resulted in manifest injustice or in a miscarriage of justice without reviewing the error, but the Supreme Court has defined plain errors as claims that "facially establish substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Rhodes,* 988 S.W.2d 521, 526 (Mo. banc 1999). Hence, we conclude that we should first satisfy ourselves that Cook's claim of

plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. Only then should we review the claim to determine whether manifest injustice or a miscarriage of justice actually occurred.

■ Cook's claim does not constitute a claim of plain error. Presenting evidence of a defendant's silence after his or her arrest is fundamentally unfair if the government has assured a defendant that he or she has a right to remain silent and that his or her doing so cannot be used to convict them. *Wainwright v. Greenfield,* 474 U.S. 284, 292, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *State v. Mahan,* 971 S.W.2d 307, 314 (Mo. banc 1998). Nothing in this record indicates one way or the other whether officers had advised Cook of his right to remain silent. Moreover, the prosecutor's questions were to overcome Cook's defense that he killed Henry as a result of a mental disease or defect by contrasting his conduct with his behavior six months earlier when officers had to subdue Cook because he believed that demons were attacking him. The prosecutor's questions were intended to show that Cook did not make any spontaneous exclamations or exhibit bizarre conduct as he had done six months earlier.

Because nothing on the face of Cook's claim gives us a substantial ground for believing that manifest injustice or a miscarriage of justice has occurred, Cook's claim is not a claim of plain error. We, therefore, decline his request to review the matter pursuant to Rule 30.20.

■ Cook makes similar complaints concerning the prosecutor's cross-examinations of psychiatrists that Cook presented. Cook complains that the prosecutor asked Deja Sudikant:

Q. [W]e're entitled to compel this defendant to speak to our doctor of our own choosing, one time?

A. That's correct. Let me take that back. I don't think the law said that he has to speak with a doctor.

Q. Right. And if he doesn't speak with us, then we can compel them that they can't put on an expert either; do you know that?

Cook objected that the testimony was irrelevant, but the circuit court overruled it. Cook also complains of similar questions asked of Sam Parwatikar, a medical doctor and forensic examiner, earlier in the trial:

Q. Now you're familiar with Section 552 and the parameters and some of the court rulings, [e]ffects of [c]ourt orders[,] aren't you?

A. Yes.

Q. And you know that the [p]rosecutor's [o]ffice has to get a[c]ourt order to allow someone that we select, a psychiatrist, to talk with a defendant? You know that?

Again, Cook objected on grounds that the testimony was irrelevant and that it exceeded the scope of his direct examination.

Again, if we review Cook's complaint that the prosecutor's questions were designed to call attention to Cook's right to remain silent, we must do so as plain error because Cook did not preserve the issues for our review. We decline plain error review. A facial examination of the questions establishes that they did not involve Cook's exercise of his right to remain silent before trial.

■ Finally, Cook complains of the testimony by a psychiatrist presented by the state, John Rabun, in rebuttal. In response to the prosecutor's question of why Rabun believed that Cook was not suffering a mental disease or defect when he killed Henry, Rabun said:

It is important to look at all the behaviors someone exhibits before coming to a conclusion about whether they are suffering from a mental disease or defect....

. . . .

In other words, his behavior wasn't inappropriate or bizarre within that context.

. . . .

He also did other things after the homicide; for example, he was able to follow the directions of the officers, when he chose to, but at one point did attempt to either flee or grab the officer.

And he[,] upon his arrest, stopped his struggle and didn't make any odd or inappropriate comments on the way to the police station. He was in their holdover[—]or I can't remember what they call it, but their holdover cell for an hour and made no strange or inappropriate requests. I believe that he asked for simply a glass of water. And he didn't act bizarre.

*He was able to understand his rights, et cetera, things of that nature.*[2]

Cook objected that this testimony was a comment on Cook's constitutional right to remain silent and to exercise his right to counsel.

The circuit court properly overruled the objection. Rabun's testimony did not comment on Cook's *exercise* of his constitutional rights. He addressed only Cook's conduct—his ability to *understand* his rights. This was proper and not a violation of the United States Constitution. *Wainwright,* 474 U.S. at 295, 106 S.Ct. 634.

Cook also complains of the prosecutor's asking Rabun why his first interview of Cook lasted only five minutes. The circuit court sustained the objection. Cook also complained of Rabun's testifying that he had given Cook "warnings" each time he interviewed him. Cook infers that these "warnings" referred to his constitutional rights. Not so. The record is clear that Rabun was referring to the explanations he gave Cook that he was appointed by the state to examine him and that he intended to develop an opinion about Cook's sanity from the interview. Cook's objection at

trial did not concern Cook's exercise of his constitutional rights. We decline plain error review of the issue because, facially, the record establishes no merit for Cook's claim.

Cook next complains of "prosecutorial misconduct." Cook lists a number of unrelated incidents, many not objected to at trial. None amounted to prosecutorial misconduct, and none constituted reversible error. He endeavors to bundle the averred errors into an argument that, cumulatively, they amount to prosecutorial misconduct. The courts have repeatedly rejected such contentions. *State v. Gray,* 887 S.W.2d 369, 390 (Mo. banc 1994), *cert. denied,* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *State v. Hunter,* 840 S.W.2d 850, 869–70 (Mo. banc 1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). We reject the point again.

■ Finally, Cook complains that the circuit court refused to adjourn at a "reasonable time." On Monday, the trial's first day, the circuit court adjourned at 6:15 P.M. On Tuesday, the circuit court adjourned at 8:27 P.M., at 7:00 on Wednesday night, and at 8:01 on Thursday night. It submitted the case to the jury at 7:45 P.M. on Friday, and the jury returned its verdicts at 12:32 A.M. on Saturday.

■ The circuit court had much discretion to decide when to adjourn its proceedings. *See State v. Moore,* 925 S.W.2d 466, 467 (Mo.App.1996). This includes the circuit court's discretion to decide how long to allow a jury to deliberate before adjourning for the day. *State v. Hoban,* 738 S.W.2d 536, 542 (Mo.App. 1987). We find nothing in the record suggesting that the circuit court abused its discretion. We fail to see adequate support for Cook's complaint that the schedule was too fatiguing for his attorneys. Moreover, the jurors repeatedly told the circuit court that they wanted to continue

---

**2.** We added the emphasis.

their deliberations. We reject the point as without merit.

ROBERT G. ULRICH, Judge, and EDWIN H. SMITH, Judge, concur.

