**STATE of Missouri, Plaintiff–Respondent,**

v.

**Christopher GRAY, Defendant–Appellant.**

**Nos. 27700, 27701, 27702.**

Missouri Court of Appeals, Southern District, Division One.

July 19, 2007.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 10, 2007.

Application for Transfer Denied Sept. 25, 2007.

*son & Thall v. Advest, Inc.,* 623 F.Supp. 11, 13 (D.C.Pa.1985).

M. Shawn Askinosie, Stacie Bilyeu, John Gore, Askinosie & Bilyeu, LLC, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Christopher L. Gray (defendant) appeals judgments rendered in three criminal cases consolidated for trial. He was charged in No. 27700 with sexual exploitation of K.G., a minor, § 573.023;[1] in No. 27701 with five counts of statutory sodomy in the first degree, § 566.062, and one count of statutory rape in the first degree, § 566.032; and in No. 27702 with one count of statutory rape in the first degree, § 566.032, and one count of statutory sodomy in the first degree, § 566.062. He was found guilty of all charges. This court affirms the judgment of conviction in No. 27700, reverses the judgments of conviction in Nos. 27701 and 27702, and remands Nos. 27701 and 27702 for new trial.

Defendant waived trial by jury. Nevertheless, "[t]he same standard of review applies to criminal cases tried by the court without a jury as in cases tried by a jury." *State v. Wirth,* 192 S.W.3d 480, 481 (Mo. App.2006).

> "We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. [*State v. Pollard,* 941 S.W.2d 831, 833 (Mo.App.1997)]. We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Phillips,* 940 S.W.2d 512, 520 (Mo.banc 1997). . . ."

*Id.* at 481–82, *quoting State v. Mayfield,* 83 S.W.3d 103, 104–05 (Mo.App.2002).

*Background*

Defendant was a foster parent. He and his then wife, Michelle McDonald, received custody of three girls, K.G., A.G., and R.G. in 1991. Defendant's marriage with Ms. McDonald was later dissolved; however, he continued to have custody of the girls and, subsequently, adopted them as a single person. Thereafter, he met

---

1. References to statutes are to RSMo 2000.

and married Maya Gasa. The children were removed from defendant's home in 2004 following a report to the Christian County Children's Division that defendant was sexually abusing them. The children were placed in foster care.

Charges were filed in the Circuit Court of Christian County in 2004. Defendant's cases were transferred to Camden County on change of venue. Trial was held in Camden County February 21, 22, and 24, 2006.

### Endorsement of DNA Expert Witness Staci Bollinger [2]

■ The state filed a "Motion to Endorse" that appears to have been faxed to the circuit court on February 14, 2006, and filed February 16, 2006. One of the persons the motion sought to endorse as a witness was criminalist Staci Bollinger, a DNA expert. On February 17, 2006, defendant filed suggestions in opposition to the request to endorse Staci Bollinger as a witness. The state's motion requested the trial court to "shorten the time for hearing on [the] State's Motion to Endorse Witnesses" and, on the bottom of the motion, included a "Notice of Hearing" that states, "The foregoing motion shall come before the Court on the 21st day of February, 2006 at 8 am, [sic] or as soon thereafter as counsel may be heard."

The trial court heard the state's motion the morning trial commenced, February 21, 2006. The prosecuting attorney told the trial court that Ms. Bollinger was "a DNA expert with the Missouri State High-

way Patrol." He stated that defendant's attorney "had notice of her in previous lab reports," but acknowledged "[t]here was a later one that [he did] not know if [he] sent ... until the last minute or not." He added, "I may have sent it earlier but I cannot tell the Court that." The prosecuting attorney did not identify the nature of any of the reports to which he referred, nor did he tender copies of those reports to the trial court.

Defendant's attorney told the trial court that he had "asked for testimony of expert witnesses and any evidence"; that he had received a faxed copy of a DNA report the previous week.[3] The trial court permitted Ms. Bollinger to be endorsed as a witness. It denied defendant's request for continuance, but suggested to the prosecutor, "If you have a curriculum vitae for the DNA expert, you should provide it to [the defense attorney] at the earliest opportunity." The record is silent as to whether any information was provided.

Point II is directed to the trial court allowing the state to endorse Ms. Bollinger as a witness and denying defendant's request for continuance. Point II asserts that the trial court erred in permitting the late endorsement of Ms. Bollinger or, alternatively, in denying defendant's request for continuance. Defendant argues that the lateness of the endorsement prevented defendant from adequately preparing "to counter her damaging testimony" in that defendant could not have anticipated the evidence she provided.

---

**2.** Ms. Bollinger's given name is spelled "Staci" in the trial transcript and "Stacey" in the state's motion. Her surname is spelled "Bollinger" in the transcript and "Bolinger" in the motion. This opinion uses the spellings that appear in the transcript.

**3.** Defendant filed a motion August 19, 2004, that requested, among other things, names of all persons the state intended to call as wit-

nesses, production of scientific reports or statements by any expert, and discovery of material that had been the subject of test, comparison or sample. Defendant also requested, by a motion filed November 28, 2005, among other things, production and inspection of laboratory reports from the Missouri State Highway Patrol and "any DNA matching evidence that might tend to incriminate or exculpate Defendant."

Ms. Bollinger's testimony was primarily directed to State's Exhibit Nos. 9A and 10A. K.G. identified Exhibit No. 9A as a vibrator that had been at defendant's house. K.G. said it was Maya Gasa's vibrator but that she had been directed to use the vibrator to "get ready" for defendant. She was asked, "Ready for what?" K.G. answered, "For him to put his penis inside my vagina."

Ms. Bollinger told the trial court that she had developed a DNA profile from Exhibit 9A and compared it to known DNA samples that had been obtained for her use. She said the procedure she followed was a scientifically accepted practice. She testified that the DNA profile she developed from the samples obtained from Exhibit No. 9A was consistent with a mixture of two individuals; that K.G. could not be eliminated as a contributor to the DNA mixture she identified. She further testified that Maya Gasa could not be eliminated as a contributor to the DNA obtained from Exhibit No. 9A.

Exhibit No. 10A was "white cotton panties" found in a chest located in the master bedroom of defendant's residence in the course of executing a search warrant. K.G. told the trial court that Exhibit No. 10A was her underwear that she had when she lived at defendant's residence. K.G. said that defendant would take her dirty underwear from the laundry and stash it in other places, including his room; that defendant liked to smell her underwear. Ms. Bollinger testified that K.G., defendant, or Ms. Gasa could not be eliminated as contributors to the DNA profile removed from Exhibit No. 10A.

 As an expert witness, the evidence Ms. Bollinger presented was particularly strong in that it was based on objective, scientific principles. By not having been timely endorsed as a witness, albeit she was known to the state as an important contributor to its case, defendant was not alerted as to the need to secure independent testing to obtain evidence that might be contrary to the testimony Ms. Bollinger provided or learn information that might have been helpful for purposes of cross-examination.

In considering whether a trial court abused its discretion in permitting the endorsement of additional witnesses, an appellate court will consider the following factors: (1) whether the defendant waived the objection; (2) whether the State intended to surprise the defendant or acted deceptively or in bad faith intending to disadvantage the defendant; (3) whether the defendant was, in fact, surprised and suffered disadvantage; and (4) whether the type of testimony given might have been readily contemplated by the defendant. *State v. Thomas,* 965 S.W.2d 396, 399 (Mo.App. S.D. 1998). The main consideration is whether the late disclosure resulted in fundamental unfairness or prejudice to substantial rights of the defendant. *Id.* *State v. Downen,* 3 S.W.3d 434, 437 (Mo. App.1999).

This court does not find, under the facts in this case, that defendant waived the objection to Ms. Bollinger's participation in the trial as a witness. *See* n. 3, *supra.* Although there was discussion before the trial judge the morning trial commenced concerning whether and when reports may have been sent by the prosecuting attorney to defendant's attorney, the record does not include copies of any such reports. Further, the state has offered no explanation for why the request for Ms. Bollinger to be added as a witness was not made until one week before trial was to commence. Neither is there any explanation as to why the state made no effort to obtain a ruling on its request to endorse the witness until the morning trial was to commence. Nevertheless, although the in-

action by the state in not timely notifying defendant's attorney of the state's wish to have Ms. Bollinger testify was a questionable practice, the record does not suggest the state's actions were prompted by bad motives. Regardless, defendant was prejudiced in that he did not have time in which he could reasonably be expected to secure services of an expert to verify or contradict the DNA testing and evidence the state presented at trial.

The record before this court does not cause it to believe that prior to the state endorsing Ms. Bollinger as a witness, defendant should have readily contemplated that DNA evidence would be presented at trial. As in *State v. Whitfield*, 837 S.W.2d 503, 507 (Mo.banc 1992), where a similar situation existed with respect to a firearms expert, the prejudice that arose in this case by reason of Ms. Bollinger's testimony is real. Forcing defendant to trial immediately upon the endorsement of the DNA expert witness was fundamentally unfair and prejudiced defendant's right to defend charges that were pending against him. The prejudice to defendant outweighed any harm that would have resulted had defendant's request for continuance been granted.[4]

Point II is meritorious with respect to the offenses for which defendant was tried in Nos. 27701 and 27702. Defendant was charged with having committed five counts of statutory sodomy in the first degree and one count of statutory rape in the first degree in No. 27701 with respect to K.G. He was charged with one count of statutory rape in the first degree and one count of statutory sodomy in the first degree in No. 27702 with respect to A.G. Although Ms. Bollinger's DNA tests produced findings related only to K.G., due to the similarity of the charges and the relationships between defendant and both K.G. and A.G., as well as the similar time frames for those charges, this court finds that defendant's right to present defenses in both cases was unfairly prejudiced.

■ Case No. 27700, however, charged defendant with sexually exploiting K.G. by "knowingly videotap[ing] and creat[ing] obscene material and child pornography with a minor/child K.G. (DOB 01–06–93)." As best this court can discern from the transcript that is part of the record on appeal, a videotape recording on which K.G. appeared was introduced in evidence as State's Exhibit No. 1A. This court infers that Exhibit No. 1A is the basis for the charge that is the subject of No. 27700; however, the exhibit was not deposited with this court.

■ Defendant presents no argument directed to any claim of prejudice in No. 27700 resulting from evidence Ms. Bollinger provided at trial. This court's review of the record revealed no evidence provided by Ms. Bollinger that went to the charge

---

4. The state, in contending the trial court did not abuse its discretion in permitting Ms. Bollinger to be endorsed as a witness and denying defendant's request for continuance, cites cases in which late endorsements of witnesses were not held to be abuses of discretion: *State v. Hibler*, 21 S.W.3d 87, 93 (Mo. App.2000); *State v. Downen*, 3 S.W.3d 434, 437 (Mo.App.1999); *State v. Stamps*, 865 S.W.2d 393, 398 (Mo.App.1993); *State v. Benson*, 574 S.W.2d 440, 443 (Mo.App.1978); *State v. Dodson*, 572 S.W.2d 188, 189 (Mo. App.1978). None of these cases involved the prejudicial effect that DNA evidence threatens due to its technical and persuasive nature when a defendant does not have an opportunity to seek evidence from other experts that might rebut it. Further, in the cases cited, the defendants were aware of both the witnesses and the content of the testimony they ultimately provided prior to trial so that the evidence they provided could have been reasonably anticipated. Additionally, the issue of late endorsement was not preserved in some of the cases cited. *See Downen, supra; Stamps, supra.*

in No. 27700. Mindful that "[i]t is an appellant's duty to insure that the record on appeal includes all the evidence and proceedings necessary for determination of the questions presented," *State v. Sumowski,* 794 S.W.2d 643, 646 (Mo.banc 1990), this court finds that Ms. Bollinger's testimony and the DNA evidence she presented did not affect No. 27700. Point II is granted with respect to Nos. 27701 and 27702. Point II is denied with respect to No. 27700.

### Admission of State's Exhibit Nos. 3–8 and 15–23

■ Point I claims trial court error in admitting State's Exhibit Nos. 3–8 and 15–23. These are diagrams of bodies—the front sides and back sides of boys and girls—and drawings included on the diagrams or on other paper and notations of names used by the children in describing body parts. The drawings were made as part of the process of conducting interviews of K.G. and A.G. at a Child Advocacy Center.[5] A videotape recording of the interview with A.G. was admitted in evidence. Defendant does not contend the admission of the videotape recording was error.

Defendant contends it was error to admit in evidence Exhibit Nos. 3–8 and 15–23 "as business records because the exhibits contained inadmissible hearsay statements" of K.G. and A.G. "who had no business duty to communicate them" to the interviewer who made entries on the documents that were admitted in evidence.

A trial court has broad discretion in ascertaining the admissibility of evidence. *State v. Hayes,* 15 S.W.3d 779, 785 (Mo. App.2000). "This court will not interfere with a ruling on admissibility of evidence absent a clear showing of abuse of discretion." *State v. Ames,* 44 S.W.3d 825, 828

(Mo.App.2001). Further, this court's review of the trial court's actions is for prejudice, not mere error. *State v. Morrow,* 968 S.W.2d 100, 106 (Mo.banc), *cert. denied,* 525 U.S. 896, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998). A ruling will result in reversal "only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.,* 968 S.W.2d at 106.

The notes and drawings to which Point I is directed were made during the interviews of K.G. and A.G. at the Child Advocacy Center. The interviewer testified about why and how the notes and drawings were made. The videotape recording of the interview of A.G. shows the interviewer making notes and drawings and referring to them in her interview with A.G. The state offered copies of the notes and drawings to explain other evidence that was before the court in order to "give the Court a better understanding as to what was written and what was shown and done in that interview." The exhibits were admitted "as documents reflecting earlier testimony" and "to indicate the drawings that were made by the children." The trial court indicated the admission of the drawings was "not for the truthfulness of anything but to indicate the drawings that were made by the children" and "as documents reflecting earlier testimony."

In view of the fact that Point II has been granted with respect to Nos. 27701 and 27702 and, therefore, that new trials of those cases will be necessary, it is unlikely that the posture of the evidence in the new trial would be the same as exists in the record now before this court. For that reason Point I is, arguably, moot. Regardless, because these cases were tried without a jury, this court presumes that if the evidence were inadmissible (a finding this court is not required to make and

---

**5.** Point I goes to Nos. 27701 and 27702. This court discerns nothing in the exhibits to

which Point I is directed that is related to No. 27700.

which it does not make) the judge was not prejudiced by its admission in that there is no showing that the judge considered and relied on the evidence in making his findings. *See State v. Clay,* 909 S.W.2d 711, 716 (Mo.App.1995). Point I is denied.

### *Sufficiency of the Evidence—Case No. 27702*

■ Defendant filed motions in No. 27702 seeking judgment of acquittal on the basis that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. The trial court denied the motions. Point III argues this was error "because insufficient evidence existed to prove [defendant's] guilt beyond a reasonable doubt in that the state's evidence failed to establish the criminal agency of [defendant] or effectively corooborate [sic] the testimony of A[.]G[.] rendered doubtful by its contradiction with physical facts, surrounding circumstances, and common experience."

Rule 84.04(d) prescribes what a point relied on must contain.[6] It states:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

. . .

■ Arguably, Point III does not comply with Rule 84.04(d)(1)(C). It does not explain, in the context of the case, why, or in what manner, the state "failed to establish the criminal agency" of defendant or what aspect of A.G.'s testimony was contradictory so as to render it doubtful so that corroboration would be required. "Lack of compliance with requirements of Rule 84.04 amounts to failure to preserve issues for appellate review." *State v. Eggers,* 51 S.W.3d 927, 930 (Mo.App.2001). This court may, nevertheless, review an issue, as it perceives it from a faulty point, for plain error. *Lamar Advertising of Missouri, Inc. v. McDonald,* 19 S.W.3d 743, 745 (Mo.App.2000). Plain error occurs "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c).

■ Defendant asserts that aspects of A.G.'s trial testimony (A.G. was eight years old at the time of trial) were rendered doubtful because she was unable to identify defendant at trial; that she could not remember living in Nixa, Missouri; that she could not state the location in the house where acts about which she testified occurred or a specific time when acts occurred. That argument, however, ignores other evidence.

■ A.G.'s out-of-court videotaped statements were admitted in evidence. Those statements support the convictions. *See State v. Hayes,* 169 S.W.3d 613 (Mo.App.2005); *State v. Benwire,* 98 S.W.3d 618 (Mo.App.2003); *State v. Blue,* 811 S.W.2d 405 (Mo.App.1991). Conflicts between a witness's trial testimony and previous testimony or statements are for the trial court to reconcile in assessing credibility. *State v. Waddell,* 164 S.W.3d 550, 553 (Mo.App.2005). Additionally, physical examination of A.G. disclosed evidence of a healed injury and scarring consistent with vaginal penetration and sexual abuse.

---

**6.** The brief for an appellant in a criminal case must contain the material prescribed by Rule 84.04. *See* Rule 30.06(c).

This court's review of the evidence adduced with respect to No. 27702 does not leave it with the notion that manifest injustice or miscarriage of justice occurred with respect to the trial court finding defendant guilty of the offenses charged in that case. Point III is denied.

### Disposition

The judgment of conviction in No. 27700 is affirmed. The judgments of conviction in Nos. 27701 and 27702 are reversed. Case Nos. 27701 and 27702 are remanded for new trial.

RAHMEYER, P.J., and SCOTT, J., concur.