**STATE of Missouri, Plaintiff–Respondent.**

v.

**Harold RUSHING, Jr., Defendant–Appellant.**

**No. 27749.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 10, 2007.

Christopher Lynn Yarbro, Poplar Bluff, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victor Joseph Melenbrink, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Following a second jury trial, Harold Rushing, Jr. (Defendant) was convicted on two counts of first-degree statutory sodomy, one count of second-degree statutory sodomy and one count of attempted forcible rape. See §§ 566.062, 566.064, 566.030.[1] The charges against him involved allegations that he sexually abused his daughter, T.R. (Daughter). Defendant's appeal presents eleven points for review. His third point, however, is dispositive. After a first trial had ended in a hung jury, and only six days before a second trial began, Defendant was made aware that Daughter had disclosed new allegations of sexual abuse on a specific date never previously mentioned. This new information had been disclosed to the State during a witness preparation meeting with Daughter. When Defendant sought to depose Daughter about the new allegations, the court sustained the State's motion for a protective order and quashed the deposition. Because the State failed to demonstrate good cause for prohibiting Daughter from being questioned about her new allegations, the court's ruling was erroneous and rendered the trial fundamentally unfair. Therefore, this Court is compelled to reverse Defendant's convictions and remand the case for a new trial.

In 2005, Defendant was married and lived with his wife, two sons and Daughter. In late March 2005, Daughter was 15 years old and attending high school. She sent one of her teachers a note stating that her father had been sexually abusing her since she was eight years old. Although the teacher was a mandated reporter, she did not immediately report the matter because of concerns about whether the Daughter was telling the truth. On April 12, 2005, the teacher turned the note over to her school principal. The next day, a hot-line call concerning the matter was made to the Missouri Children's Division.

In December 2005, Defendant was charged with committing two counts of statutory sodomy in the first degree, one count of statutory sodomy in the second degree and one count of attempted forcible rape. Daughter testified about her allegations she made against Defendant during a May 2005 juvenile hearing, a June 2005 preliminary hearing and a November 2005 deposition. In each instance, Daughter maintained that she had been subjected to sexual contact and abuse by Defendant since she was eight years old, but she could only recall one specific date on which acts of abuse had taken place. That date was March 16, 2005, which was the day before she left on a school-sponsored trip.

Defendant's first jury trial on the above-mentioned charges took place on December 12–13, 2005. Daughter was called as a witness by the State and testified about events that she said had taken place at her home on Wednesday, March 16, 2005. Daughter said that she was cleaning in a shed on their property when Defendant offered to give her $200 to take on her school trip if she would have sex with him that night. Daughter said she refused and received $75 for her trip. Daughter acknowledged that March 16th was her older brother's birthday, but she said her family had already celebrated the event the prior Sunday. According to Daughter, none of her grandparents were present at Defendant's home at all on that day.

1. All references to statutes are to RSMo (2000).

After giving the foregoing testimony, Daughter remained in the courtroom and listened to several defense witnesses give contradictory testimony concerning the events of March 16, 2005. Defendant adduced testimony from several witnesses that Daughter did not arrive at home until around 6:30 p.m. because she was playing softball. Her maternal grandparents were already there. Her paternal grandparents arrived shortly after Daughter. The family celebrated the older brother's birthday that evening. The maternal grandparents left around 9:30 p.m. The paternal grandparents remained at Defendant's residence until 10:10 p.m. They recalled that Daughter was very excited about her school trip and went to bed after eating her cake and ice cream.

After nearly five hours of deliberation, the jury announced they were deadlocked. The trial court declared a mistrial and reset the case for a second trial commencing on March 29, 2006.

On March 22, 2006, the prosecutor met with Daughter. During this meeting, Daughter disclosed, for the first time, that she remembered performing oral sex on Defendant on Monday, March 14, 2005. Before then, Daughter's description of the events of March 16, 2005, was the only specific date on which she said sexual abuse by Defendant had taken place. On March 23, 2006, the prosecutor sent defense counsel a fax describing Daughter's new allegations. This correspondence acknowledged that Daughter had not previously been questioned about the March 14th events.

On March 24, 2006, Defendant filed a motion for continuance. After acknowledging receipt of the prosecutor's correspondence, defense counsel requested a delay in the trial because Daughter had changed her prior allegations. "The alleged victim now alleges the only known time of specific abuse occurred earlier in time than she had reported during every previous hearing or opportunity counsel had to question." Counsel asked for an opportunity to question Daughter about her new allegations so as to be able to effectively cross-examine her and thereby avoid unfair surprise at trial. After conducting a hearing by conference call, the court denied the request for a continuance. That same day, Defendant filed a notice of deposition scheduling Daughter's deposition for March 28, 2006, at 9:00 a.m. Upon receipt of the notice, the prosecutor immediately filed a motion for a protective order and asked the court to prohibit the deposition. The motion alleged that there was "no good purpose or reason legally or factually" to require a second deposition of Daughter because defense counsel had already questioned her on several occasions. The motion did not allege that Daughter's deposition would cause annoyance, embarrassment, oppression, undue burden or expense, and it was not supported by an *affidavit or any other form of evidence*. On March 27, 2006, the trial court took up the motion for protective order by conference call. After hearing only arguments of counsel, the trial court sustained the motion for protective order and quashed Defendant's notice of deposition. The docket entry neither states that the court found "good cause" to quash the deposition nor identified any particular reason why Daughter should not be deposed prior to trial concerning her new allegations of sexual abuse by Defendant.

The second trial commenced as scheduled on March 29, 2006. Daughter was called as a witness, and her testimony included a recital of events that occurred on March 14, 2005. Defendant was convicted on all four counts submitted to the jury. Thereafter, Defendant filed a timely motion for a new trial, claiming, *inter alia*,

that he was prejudiced by the trial court's decision to issue the protective order and prevent Defendant from deposing Daughter about her new allegations of sexual abuse. The motion was denied, and Defendant appealed.

While the appeal was pending in this Court, Defendant filed a motion to remand back to the trial court to allow the filing of a new motion for new trial based upon newly discovered evidence. The motion alleged that Daughter had completely recanted the testimony that she had given at Defendant's trial.[2] Attached to the motion, there was a letter from Daughter to Defendant's attorney. The letter stated:

I am writing this letter in regard of the case of the State of Missouri VS [sic] Harold Junior Rushing II. I am very sorry for not saying anything earlier in the year about lying about the case. I came forward to my mother over the weekend and told her that I had lied. My dad has never touched me in a way that is inappropriate. When I wrote the letter to [my teacher] I was mad at my mother and my father because I did not get my way. I wanted to go with [my teacher] after church and they would not let me. I was very wrong and I am sorry for saying the things that I did. I put my dad in a predicament by saying those accusations and I never thought it would go this far. The state got me confused by having me to restate my statements many of times. I am very sorry for all the trouble that I have caused and I hope that this can get straitened [sic] out because I can not bear that my dad is in the pin [sic] for something that he did not do.

The letter was signed by Daughter, witnessed by a second person and notarized by a third person. After receiving the letter, defense counsel took a sworn statement from Daughter, who was represented by her own attorney. At the outset of the statement, Daughter was advised that she could be charged with perjury for testifying falsely and could be fined or imprisoned if convicted. Daughter then gave the following sworn statement:

Q. And in the spring of 2005 did you make an allegation concerning your father?

A. Yes.

Q. What were those allegations?

A. Sexual abuse.

Q. More specifically, can you be more specific with the nature of your allegations?

A. I had said that he had molested me since I was eight years old.

Q. Okay. And as we sit here today, huh, is it truth and fact that the statements you made before were false?

A. Yes.

Q. And how were those statements false?

A. I made them up because I got mad at my father and mother because I couldn't go somewhere after church with [my teacher].

. . . .

Q. ... [Y]ou are still, as of today, indicating that your prior testimonies in the preliminary hearing in State vs. Rushing, in the first trial in December in State vs. Rushing, in the deposition of November 2005 in [S]tate vs. Rushing and in the second trial in March 2006 that your allegations at that time were false?

A. True.

---

**2.** Defendant based his motion for remand on *State v. Mooney*, 670 S.W.2d 510 (Mo.App. 1984) and *State v. Williams*, 673 S.W.2d 847 (Mo.App.1984). (Motion for Remand 4).

This Court ordered that Defendant's motion for remand be taken with the case.

■ In Defendant's third point, he contends the trial court abused its discretion in issuing a protective order that prohibited Defendant from deposing Daughter concerning her new allegations of sexual abuse. Defendant argues that the State failed to show good cause justifying the protective order, and that order denied Defendant the opportunity of discovery so as to prepare a meaningful defense against the new allegations. We agree.

■ Once the State became aware of Daughter's new allegations, it had a duty to disclose that information to Defendant. Rule 25.03(A)(1); *State v. Whitfield*, 837 S.W.2d 503, 506–07 (Mo. banc 1992).[3] The prosecutor's March 23rd correspondence to defense counsel is a tacit recognition of that obligation. When Defendant was apprised of this new information, he immediately sought to depose Daughter about her new allegations. Rule 25.12(a) authorizes a defendant in a pending criminal case to orally depose any person. The purpose of the foregoing discovery rules in criminal cases is to prevent surprise at trial and permit both sides to know the witnesses and evidence that will be introduced. *State v. Cook*, 5 S.W.3d 572, 575 (Mo.App. 1999). A violation of discovery rules is reversible error if it results in fundamental unfairness or prejudice to a defendant's substantial rights. *Id.*

■ When Defendant sought to depose Daughter, the State filed a motion for protective order to block the deposition entirely. "Criminal Rule 25.12 authorizes depositions in criminal cases to be governed by the rules relating to the taking of depositions in civil actions." *State ex rel. Schwebe v. Campbell*, 878 S.W.2d 827, 828 (Mo.App.1993). Civil Rule 56.01(c) author-

izes protective orders to prevent or restrict a deposition "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Protective orders, however, are subject to a requirement that such orders may be granted only "for good cause shown." Rule 56.01(c). Thus, the State bore the burden of proving that good cause existed for completely prohibiting Daughter from being deposed about her new allegations of sexual abuse. *See State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002). A trial court has the discretion to determine whether good cause exists, but a court must have evidence presented before it can exercise discretion. Without evidence, it is impossible to ascertain whether good cause exists. *See Stortz by Stortz v. Seier*, 835 S.W.2d 540, 543 n. 3 (Mo.App.1992); *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 343 (Mo.App.1986).

■ Applying these principles to the case at bar, the court erred in granting the protective order. The State recognized its obligation to notify Defendant about Daughter's new allegations. When Defendant wanted to depose Daughter on that subject, however, the State sought to prohibit the deposition. The motion for protective order did not allege any of the recognized grounds in Rule 56.01(c) for granting such relief. Instead, the State asserted that there was no reason for an additional deposition because Daughter had already been questioned by defense counsel. That assertion ignored the fact that defense counsel had never questioned Daughter about the events of March 14, 2005 because she had not disclosed them to either side until six days before the second trial commenced. More importantly, the State presented no evidence in sup-

---

**3.** All references to rules are to Missouri Court Rules (2007).

port of its motion. When a protective order is not supported by an evidentiary showing of good cause, "the order is both unauthorized and arbitrary." *Schwebe,* 878 S.W.2d at 828; *see also Brown,* 722 S.W.2d at 343.[4] Finally, the trial court made no finding that good cause existed to quash Daughter's deposition, nor did the court articulate any reason for its order from which the existence of good cause could be inferred.

█ █ The trial court's decision to prohibit Daughter from being deposed about her new allegations rendered Defendant's trial fundamentally unfair. He was forced to proceed to trial without being given any opportunity to question Daughter, the principal witness against him, about her version of what had occurred on March 14, 2005. That date was one of only two identified by Daughter on which she claimed to recall specific events of sexual abuse by Defendant. As a result, Defendant was deprived of a fair opportunity to marshal persuasive alibi evidence concerning the March 14th date and to effectively cross-examine Daughter at trial. Point III is granted.[5] Given our disposition of this point, we need not address the remaining ten points raised in Defendant's brief.

Similarly, his motion to remand the case to allow the filing of an additional motion for new trial based on newly discovered evidence is moot.

The judgment is reversed, and the case is remanded for a new trial. Before retrying Defendant, we direct the trial court to permit Defendant to redepose Daughter. We recognize that the court, in its discretion, may limit the scope of the deposition to certain matters. Rule 56.01(c)(4). At a minimum, however, Defendant must be permitted to depose Daughter about: (1) her new allegations of sexual abuse by Defendant on March 14, 2005; and (2) the recantation of her allegations of sexual abuse by Defendant.[6]

GARRISON, J., and LYNCH, J., concur.

---

**4.** Citing *State v. Jovanovic,* 615 S.W.2d 533 (Mo.App.1981), the State argues that defense counsel's prior questioning of Daughter was sufficient. In *Jovanovic,* the eastern district of this Court affirmed a trial court's refusal to allow defendant's second attorney, who was dissatisfied with the first deposition, to depose the victim a second time. *Id.* at 534. There, the need for a supplemental deposition was outweighed by the hardship imposed upon the victim by testifying again about the same facts. *Id. Jovanovic* is factually distinguishable because, unlike here, the request for a supplemental deposition was not prompted by any new allegations disclosed by the victim.

**5.** Citing *State v. Thomas,* 965 S.W.2d 396 (Mo.App.1998), the State argues that one week was sufficient time for Defendant to

prepare to meet Daughter's new allegations. We find this case inapposite. In *Thomas,* the State endorsed a co-defendant as a witness one week before trial. This Court upheld the trial court's denial of a continuance, in light of the fact that the defendant could have elected to depose the co-defendant and that the case had already been continued twice. *Id.* at 400. The State's reliance on *Thomas* is misplaced because Defendant was prohibited from deposing Daughter about the new allegations of sexual abuse, and Defendant had not previously been granted a continuance.

**6.** In suggestions filed after oral argument, the State alleged that Daughter has since recanted her recantation. If so, the trial court should permit Daughter to be questioned on this subject as well.