

# Missouri Court of Appeals

## Southern District

### Division One

CURTIS SHORE,　　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　　　　Appellant,　　　　　）
　　　　　　　　　　　　　　　　）
　　vs.　　　　　　　　　　　　　）　　No. SD33021
　　　　　　　　　　　　　　　　）　　Filed: October 17, 2014
STATE OF MISSOURI,　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　　　　Respondent.　　　　　）

APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Kenneth M. Hayden, Circuit Judge

**<u>AFFIRMED</u>**

Curtis Shore ("Shore") appeals the motion court's denial of his Rule 29.15[1] motion, following an evidentiary hearing, on the basis the motion court clearly erred in denying his claim of ineffective assistance of trial counsel. We affirm the judgment of the motion court.

---

[1] Unless otherwise specified, all rule references are to Missouri Court Rules (2013).

**Factual and Procedural Background**

We set forth only those facts necessary to complete our review. In doing so, we view the evidence in the light most favorable to the motion court's judgment. *McCauley v. State*, 380 S.W.3d 657, 659 (Mo.App. S.D. 2012).

Shore was tried before a jury on September 14 through 17, 2009, and was found guilty of the class A felony of murder in the first degree (Count I), pursuant to section 565.020, and the class A felony of armed criminal action (Count II), pursuant to section 571.015.[2] Shore was sentenced to life without parole on Count I, and to 30 years' imprisonment on Count II, to run consecutive to Count I. This Court affirmed Shore's conviction and sentence on direct appeal in *State v. Shore*, 344 S.W.3d 292, 294 (Mo.App. S.D. 2011). Additional facts detailing Shore's offenses are recited there.

On November 14, 2011, with the assistance of counsel, Shore filed a post-conviction motion. Among the claims asserted in the motion, Shore alleged that his trial counsel, Daniel Hunt ("attorney Hunt") and attorney Darrell Deputy ("attorney Deputy"),[3] were ineffective for "failing to hire a mental health expert to examine [Shore] for the defense of not guilty by reason of mental disease or defect" (Ground 5), and "failing to produce evidence of [Shore]'s weakened condition and state of mind due to his September 2005 stroke[,]" as this evidence would have been useful "to negate the elements of murder or demonstrate the required fear element for self-defense" (Ground 7).

On January 8 and July 2, 2013, the motion court held an evidentiary hearing. Shore's attorney advised the motion court that Shore intended to abandon all but two of his claims, and

---

[2] All references to statutes are to RSMo 2000, unless otherwise indicated.

[3] Referred to collectively as "trial counsel."

that he intended to proceed only "on grounds 5 and 7," addressing Shore's contentions he was not "guilty by reason of insanity and diminished capacity and the general allegations of self-defense as they may relate to his diminished capacity only[.]"

At the hearing, Daniel Mizell ("attorney Mizell") testified that he practiced law with attorney Deputy at the time attorney Deputy's firm was defending Shore. Attorney Mizell, upon direction of attorney Deputy, obtained and reviewed Shore's Social Security disability file and medical records for the purpose of investigating a possible diminished capacity defense. Attorney Mizell contacted Dr. Dale Halfaker ("Dr. Halfaker"),[4] a neuropsychologist who had examined Shore in the past, to determine if he would serve as an expert witness.

At attorney Mizell's request, Dr. Halfaker reviewed Shore's medical records and then had a telephone conference with attorney Mizell. Attorney Mizell discovered that Dr. Halfaker's associate, Dr. Steven Akeson ("Dr. Akeson"), performed cognitive testing of Shore for Shore's Social Security disability claim and wrote a consultative report approximately six months before the murder. In his report, Dr. Akeson concluded that Shore appeared to have an

> 'underlying personality disorder with narcissistic and possibly antisocial traits present,' that he did 'appear to have a degree of depression,' that . . . 'his cognitive skills appear[ed] generally intact,' and that there did not appear to be 'enough evidence of cognitive decline to warrant a vascular dementia diagnosis.' Dr. Akeson did make a 'provisional diagnosis of cognitive disorder' not otherwise specific 'due to some problems with attention and mental control, relative to his reported premorbid functioning.
>
> Dr. Akeson's diagnosis was that [Shore] was depressed, had a non-specific cognitive disorder, abused alcohol and had a personality disorder with narcissistic and antisocial traits.[5]

---

[4] The record on appeal also refers to Dr. Halfaker as "Dr. Huffaker."

[5] Dr. Akeson's report was not made part of the record on this appeal. We rely on the trial court's recitation of the report's contents as set forth in the judgment, findings of fact, and conclusions of law.

3

Attorney Mizell found Dr. Akeson's report to be relevant and used it in evaluating a diminished capacity defense.

Although attorney Mizell requested both Drs. Halfaker and Akeson assist in Shore's defense, both indicated they could not be of assistance and declined to help.

Attorneys Mizell and Deputy discussed Shore's medical records and the possibility of presenting a defense of self-defense and diminished capacity at trial. Attorneys Mizell and Deputy involved Shore in the trial strategy decision-making process by meeting with him in jail and discussing the diminished capacity defense. "Shore was adamant that [trial counsel] would pursue a castle doctrine defense[6] in this case," and it was clear "that's the defense that he wanted to pursue." Further, in attorney Mizell's view, the two defenses were inconsistent because "to form the belief -- a reasonable belief that someone is threatening your home, you'd need to understand that and appreciate it. . . . [I]f you're arguing that your capacity to understand and believe is diminished [that] would seem to be inconsistent."

In a letter dated May 13, 2008, attorney Mizell formally advised Shore that he had contacted Drs. Akeson and Halfaker and that neither were willing to participate as an expert witness in Shore's defense, and both indicated they had scheduling conflicts. Attorney Mizell further wrote that if Shore and attorney Deputy "intend to pursue diminished capacity, we will need to retain another physician to examine you and testify as to your mental state."

---

[6] Section 563.036, known as the "castle doctrine" provided:

> A person may use deadly force . . . [w]hen entry into the premises is made or attempted in a violent and tumultuous manner, surreptitiously, or by stealth, and he reasonably believes that the entry is attempted or made for the purpose of assaulting or offering physical violence to any person or being in the premises and he reasonably believes that force is necessary to prevent the commission of a felony.

§ 563.036.2(3), RSMo (2000). We note that section 563.036 was repealed in 2007 and renumbered 563.041. Shore's offense occurred in January 2007, therefore section 563.036 is the applicable version of the statute.

4

Shore then became dissatisfied with attorney Mizell's involvement in his case and attorney Hunt was hired as substitute counsel. On May 29, 2008, sixteen days after attorney Mizell's letter to Shore, attorney Deputy sought a continuance for the purpose of seeking "additional psychological testing to determine [Shore's] competence to proceed." On June 2, 2008, the trial court granted the request for continuance.

On June 27, 2008, Shore wrote a letter to attorney Hunt. In that letter, Shore wrote: "a neurologist would be more able to discuss the eight principals of temporal lobe damage with a jury than a psychologist. Any luck finding a doctor to testify?" The record is silent as to any response to this inquiry.

Shore's sole witness at the evidentiary hearing was Dr. William Logan ("Dr. Logan"), a licensed medical doctor and psychiatrist. Dr. Logan's testimony and written opinion was that Shore suffered from a mental disease or defect and that such disease or defect would have diminished Shore's capacity to appreciate the wrongfulness of his behavior and caused judgmental errors.

On October 2, 2013, the motion court denied Shore's post-conviction motion. The motion court concluded that:

- [T]here was no evidence presented by [Shore] as required by Section 552.020.3 that [Shore] 'did not know or appreciate the nature, quality or wrongfulness of such accused's conduct or as a result of mental disease or defect was incapable of conforming such accused's conduct to the requirements of the law at the time of the offense.'

- There is insufficient evidence presented by [Shore] to establish a reasonable probability that the result of the proceeding would have been different had [Shore]'s attorneys hired a mental health expert to examine [Shore] for the purpose of pursuing a defense of not guilty by reason of mental disease or defect.

5

- Attorney Mizell did obtain medical records and a previous neuropsychological consultation with a diagnosis done 6 months BEFORE [Shore] shot and killed [victim] and much closer in time to the stroke mentioned as a cause for [Shore]'s mental defect.

- Attorney Mizell did communicate with Dr. Halfaker[, and learned] . . . that [Shore] had issues with alcohol and antisocial behaviors but neither Dr. Halfaker or Dr. Akeson would testify that [those behaviors] rose to the level of mental disease or defect sufficient to provide for mitigation or a defense of not guilty but [sic] reason of a mental disease or defect.

- [T]here is ample evidence to show that given what [a]ttorneys Mizell and Deputy had gleaned from Dr. Akeson's findings, knowing the requirements for making a self-defense claim and considering the difficulty of asserting a self-defense claim and a mitigation claim and considering the ultimate ramifications of a mitigation defense and a not guilty by reason of mental disease or defect, the failure to continue to pursue such other defenses did not amount to a failure to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances.

- There is insufficient evidence presented by [Shore] to establish a reasonable probability that the result of the proceeding would have been different. . . . Dr. Logan's opinion relied heavily on a narrative provided by [Shore] that was substantially different from [Shore]'s testimony at trial and inherently unreliable. Dr. Logan's conclusions are therefore unreliable.

- A thorough review of the trial transcript containing [Shore's] testimony shows that [Shore] was lucid and detailed. . . . [Shore] described events with particularity[, and that h]is description of the shooting shows his actions were rational and deliberate, not impulsive or reactionary.

- [Shore's] letter he wrote to attorney [Mizell] . . . show[ed Shore] to be calculating and in command of the issues involved in his case.

- [Shore] clearly chose to pursue a defense of self-defense. It is clear from the record [Shore] felt he was justified in shooting and killing [victim].

- Evidence of [Shore]'s deficits were introduced at trial[, and Shore] testified about the effects [of] his stroke. The clear strategy at trial as revealed by the trial transcript was a unified theory of defense based upon self-defense – which was the only defense that would completely absolve [Shore] of guilt without a consequence of commitment or incarceration. A

6

review of all the evidence in the case shows this to be consistent with [a]ttorney Mizell's testimony that Shore 'was adamant that we would pursue a castle doctrine defense in this case' and that 'all of the case from that point was focused upon the castle doctrine defense.'

The motion court concluded that Shore had failed to prove either that trial counsel's performance was deficient, or that he was prejudiced in that

> [i]nsufficient evidence was presented that would persuade the [c]ourt that actions of [Shore's] attorneys, Darrell Deputy, Daniel Mizell or Daniel Hunt failed to rise to a level of a reasonable competent attorney. There was no evidence presented to cause this court to overturn [Shore]'s finding of guilt and his sentence and remand the case for a new trial.

This appeal followed. In his two points relied on,[7] Shore alleges the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief. As grounds, he asserts the motion court erred in finding that his trial counsel was not ineffective in failing to adequately investigate and present an effective defense of diminished capacity, and in concluding that Shore failed to demonstrate prejudice from the alleged deficient representation.

The issue for our determination is whether the motion court clearly erred in finding that Shore presented insufficient evidence to show that Shore's trial counsel was ineffective for failing to adequately investigate and present the defense of diminished capacity.[8]

---

[7] We note that Shore's points relied on do not meet the requirements of Rule 84.04. Compliance with Rule 84.04 is mandatory, and "[l]ack of compliance with requirements of Rule 84.04 amounts to failure to preserve issues for appellate review." **State v. Gray**, 230 S.W.3d 613, 620 (Mo.App. S.D. 2007) (internal quotation and citation omitted). We grant review *ex gratia*, but caution appellate counsel to follow Rule 84.04.

[8] We note that Shore's first point relied on also contends ineffective assistance of counsel on the basis that trial counsel did not request a jury instruction on the basis of the defense of diminished capacity. At the motion hearing, Shore abandoned all claims except those enunciated in grounds 5 and 7 in his post-conviction relief motion. Neither ground asserts failure to request an instruction as a basis for ineffective assistance of counsel. As a result, it is not preserved for review. **Logan v. State**, 377 S.W.3d 623, 626 (Mo.App. W.D. 2012).

**Standard of Review**

Our review of the denial of a Rule 29.15 motion is limited to a determination of whether or not the motion court's findings of fact and conclusions of law are clearly erroneous. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009); Rule 29.15(k). Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Id.* The motion court's findings are presumptively correct. *Id.*; Rule 29.15(i). We defer to the motion court's credibility determinations. *Wilhite v. State*, 339 S.W.3d 573, 576 (Mo.App. W.D. 2011).

**Analysis**

We combine Shore's points here for ease of analysis. A convicted defendant must show two elements to present an ineffective assistance of counsel claim: (1) his counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) his counsel's deficient performance was so serious as to deprive him of a fair trial in that there is a reasonable probability that without counsel's errors, the finder of fact would have found a reasonable doubt with respect to defendant's guilt. *Strickland v. Washington*, 466 U.S. 668, 687-89, 695 (1984). "We may address the *Strickland* prongs in either order and if one is dispositive, we need not consider the other." *Cothran v. State*, 436 S.W.3d 247, 251 (Mo.App. W.D. 2014). Here, we find that the motion court's findings as to trial counsel's performance are not clearly erroneous in concluding that counsel's performance was not so deficient as to fall below an objective standard of reasonableness, and therefore need not address the prejudice prong under *Strickland*.

Framing the *Strickland* test specifically to a defendant's claim that his counsel was ineffective because of counsel's failure to investigate, our Supreme Court has stated that such a claim "will be successful only if the movant can show: (1) that counsel's failure to investigate

8

was unreasonable and (2) that the movant was prejudiced as a result of counsel's unreasonable failure to investigate." **Barton v. State**, 432 S.W.3d 741, 759 (Mo. banc 2014).

As to Shore's first point—that his counsel was ineffective for failing to investigate and present a defense based on diminished capacity—the motion court concluded:

> [T]here is ample evidence to show that given what [a]ttorneys Mizell and Deputy had gleaned from Dr. Akeson's findings, knowing the requirement for making a self-defense claim and in considering the difficulty of asserting a self-defense and a mitigation claim and considering the ultimate ramifications of a mitigation defense and a not guilty by reason of mental disease or defect [defense], the failure to continue to pursue such other defenses did not amount to a failure to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances.

"Strategic [decisions] made after a thorough investigation of the law and the facts relevant to plausible [options] are virtually unchallengeable[.]" **Johnson v. State**, 406 S.W.3d 892, 900 (Mo. banc 2013) (internal quotation and citation omitted).

The motion court concluded that attorneys Mizell and Deputy performed a thorough investigation of the law and facts at issue before coming to the strategic decision to present evidence supporting a defense of self-defense rather than diminished capacity. Attorney Mizell obtained and reviewed Shore's Social Security disability file and medical records for the purpose of investigating a possible diminished capacity defense. He contacted two psychologists, one of whom had performed cognitive testing and wrote a consultative report regarding Shore's mental condition six months before the murder.

Attorney Mizell asked both psychologists to assist in Shore's case as expert witnesses, but both refused explaining that they could not assist. As the motion court concluded,

> [t]he clear import of [attorney Mizell's] testimony was that [Shore] had issues with alcohol and antisocial behaviors but neither Dr. Halfaker or Dr. Akeson would testify that rose to the level of a mental disease or defect sufficient to provide for mitigation or a defense of not guilty but [sic] reason of a mental disease or defect.

9

Attorneys Mizell and Deputy discussed Shore's medical records and the possibility of presenting both self-defense and diminished capacity at trial. In attorney Mizell's opinion, the two defenses were inconsistent because "to form the belief -- a reasonable belief that someone is threatening your home, you'd need to understand that and appreciate it." He continued, "if you're arguing that your capacity to understand and believe is diminished [that] would seem to be inconsistent." The attorneys consulted with Shore who was adamant they pursue a self-defense claim to the exclusion of the diminished capacity defense.

Under these circumstances, the motion court could find that reasonable professional judgment supported the strategic decision to cease further investigation into the diminished capacity defense. *See Strickland*, 466 U.S. at 690-91. The motion court did not clearly err in concluding that trial counsel's performance in investigating Shore's diminished capacity defense did not fall below an objective standard of reasonableness.

Shore also argues that trial counsel was ineffective because they did not introduce medical records or expert testimony in support of a diminished capacity defense. However, the motion court specifically found that "the defense of diminished capacity was abandoned in favor of a defense of self-defense." "The motion court's findings of fact and conclusions of law are presumed correct and deemed clearly erroneous only if, after reviewing the entire record, we are left with a firm impression that a mistake has been made." *Haidul v. State*, 425 S.W.3d 148, 150 (Mo.App. E.D. 2014).

We discern no evidence in the record on appeal[9] that supports Shore's argument that the defense of diminished capacity was presented ineffectively, and not abandoned as the motion court found. Shore does not "overcome the strong presumption that counsel rendered adequate assistance, exercising reasonable professional judgment." ***Johnson***, 406 S.W.3d at 900.

The motion court did not clearly err in failing to conclude that Shore's trial counsel was ineffective for failing to present medical records or expert testimony in support of a diminished capacity defense.

The judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs

---

[9] Shore's argument relies on Exhibits I, J, and K, which he suggests show trial counsel's efforts to put at issue Shore's mental state at trial. These exhibits and the underlying trial transcript, were not made part of the record on this appeal, and we must therefore assume the contents of these exhibits are favorable to the motion court's ruling and unfavorable to Shore. *See **State v. Erickson***, 404 S.W.3d 394, 396 n.2 (Mo.App. S.D. 2013) (citing Rule 30.04(c)).